507 So.2d 1287 (1987)
MISSISSIPPI STATE TAX COMMISSION
v.
DYER INVESTMENT COMPANY, INC.
No. 56574.
Supreme Court of Mississippi.
May 13, 1987.
Bobby R. Long, Gary W. Stringer, Jackson, for appellant.
Jamie G. Houston, III, Watkins & Eager, Jackson, for appellee.
Before WALKER, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This is a corporate franchise tax case. For decision today is whether not-yet-due payments emanating from an installment sale of assets, labeled "deferred gain," are includable in the corporation's statutorily defined capital employed in this state, such capital so defined forming the base upon which the franchise tax is computed. By reference to the statutory definition in effect *1288 for the years in issue, we answer the question in the negative.
For the reasons articulated below, we affirm the judgment of the Chancery Court which had in turn vacated and reversed the order of the State Tax Commission.

II.
Dyer Investment Co., Inc. (hereinafter referred to as "Dyer"), formerly known as E.F. Dyer Manufacturing Co., Inc., is a Mississippi corporation having its principal place of business in Chickasaw County, Mississippi. Dyer is the Taxpayer and is the Appellee here. For the fiscal years ending June 30, 1980, June 30, 1981, and June 30, 1982, the Commissioner of Revenue[1] (hereinafter the "Commissioner") assessed Dyer with an additional franchise tax in the amount of $1,814.00 including interest.
For the tax years in question, Dyer carried an account on its balance sheet labeled "deferred gain." The deferred gain account arose from certain installment sales transactions between Dyer and another corporation, Dyer Woodturning, Inc. Both corporations appear to have been controlled by Dr. John D. Dyer and members of his family, although nothing turns on the point. The net effect of these sales was to transfer to Dyer Woodturning, Inc. the operations of taxpayer Dyer.
Prior to October 31, 1977, Dyer was involved in the business of manufacturing furniture and wood products. As of October 31, 1977, Dyer entered into certain agreements with Dyer Woodturning, Inc. for the sale to the latter of a portion of Dyer's accounts receivable, inventory and equipment. The accounts receivable and inventory were sold for $300,000.00 and the equipment was sold for $25,000.00.
In payment for these assets, Dyer Woodturning delivered to taxpayer Dyer two installment promissory notes dated October 31, 1977. The note representing the sale of the accounts receivable and inventory was in the original principal amount of $300,000.000. The note representing the sale of the equipment was in the original principal amount of $25,000.00. Dyer did not realize a gain as a result of the sale of the accounts receivable and inventory; however, Dyer realized a gain of $19,444.49 from the sale of equipment. Because Dyer treated the sale as an installment sale under federal and state income tax law, the gain was reflected as a "deferred gain" when originally entered on Dyer's books.
The $25,000.00 note receivable provided that payments were not to begin until January 1, 1982. Because Dyer Woodturning made no payments under the terms of the note until January 1, 1982, there was no reduction in taxpayer Dyer's deferred gain account for the fiscal years ending June 30, 1980, and June 30, 1981. The deferred gain of $19,444.49 was carried over from Dyer's books to its financial statements into its federal and state income tax returns and, thus, to the state franchise tax returns. It is upon this deferred gain that the Commissioner sought the assessment of additional franchise tax for the fiscal years ending June 30, 1980, and June 30, 1981.
Also on October 31, 1977, Dyer entered into a lease agreement with Dyer Woodturning, Inc. for the building where the factory was located and the remaining equipment. Under the terms of this agreement, Dyer Woodturning, Inc. obtained an option to purchase the property leased on or before January 1, 1982, for the principal purchase price of $745,000.00. A specific condition of this option was that the lessee, Dyer Woodturning, Inc., had to pay in full the $300,000.00 promissory note given as part of the purchase price of the accounts receivables and inventory. Dyer Woodturning, Inc. exercised this option on January 1, 1982, by delivering to taxpayer Dyer an installment promissory note in the amount of $745,000.00. As a result of this sale, Dyer realized a gain of $653,068.64. This sale was also treated as an installment sale on Dyer's books, financial statements and federal and state tax returns.
Between January 1, 1982, and Dyer's fiscal year end on June 30, 1982, approximately *1289 $19,525.00 of the original deferred gain had been recognized as a result of payments made between January 1, 1982, and June 30, 1982. There was also a mathematical adjustment made to Dyer's books in the amount of $1,457.61, resulting in a deferred gain as of June 30, 1982, in the amount of $632,085.64. This is the amount which was carried over to Dyer's financial statements and tax returns for the fiscal year ending June 30, 1982. It is upon this deferred gain account in the amount of $632,085.64 that the Commissioner sought the assessment of additional franchise tax for the fiscal year ending June 30, 1982.
Even though taxpayer Dyer maintained its books on an accrual method, it did not recognize the gain realized from the sale of assets to Dyer Woodturning, Inc. in the year of the sale. Instead, it set up this gain in a "deferred gain account" under the installment method of accounting. This method of accounting is one specifically allowed under the Internal Revenue Code and the State of Mississippi Income Tax Law for purposes of determining income tax. There is no specific statutory prescription of the method of accounting to be used for determining a corporation's franchise tax.
Upon examination of Dyer's franchise tax returns for the fiscal years ending June 30, 1980, 1981 and 1982, the Commissioner assessed additional franchise tax against the deferred gain of $19,444.49 for the fiscal years ending June 30, 1980 and 1981 and against the deferred gain of $632,085.64 for the fiscal year ending June 30, 1982. The aggregate additional assessment was $1,814.00 plus interest. Feeling aggrieved by this assessment, Dyer appealed to the Board of Review which affirmed. Dyer then appealed to the Mississippi State Tax Commission, which also affirmed.
Taxpayer Dyer then filed its petition of appeal in the Chancery Court for the First Judicial District of Chickasaw County, Mississippi. See Miss. Code Ann. § 27-13-45 (1972). The case was heard on November 29, 1985. After hearing all the evidence presented, the Chancery Court entered a bench opinion wherein he found that there was no statutory requirement for the method of accounting insisted upon by the Commissioner, a method known as Generally Accepted Accounting Principles (GAAP), and that the installment method of accounting employed by Dyer was acceptable for determining value of capital employed by the corporation in this state for franchise tax purposes. As such, the Court reversed the Commission's decision and granted Dyer the relief which it sought. Thereafter, the Chancery Court entered a final judgment reflecting its bench opinion. From this decision, the Commission brings the instant appeal.

III.
Ordinarily the scope of judicial review of the actions of an administrative agency is limited by the familiar arbitrary and capricious standard. The State Tax Commission is such an agency and, accordingly, both the Chancery Court and this Court were and are limited in appellate authority. See Tenneco, Inc. v. Barr, 224 So.2d 208, 214-15 (Miss. 1969). Notwithstanding, this Court will not defer to the Commission's interpretation of a taxation statute when that interpretation is repugnant to the plain meaning thereof. See Crosby v. Barr, 198 So.2d 571, 573-74 (Miss. 1967); State Tax Commission v. Reliance Manufacturing Co., 236 Miss. 462, 470-71, 111 So.2d 225, 228 (1959).
Today's case presents a converse limitation, one imposed upon the Commission. Miss. Code Ann. § 27-13-11 (1972), as it read for the tax years in issue, provided:
In all cases for the purpose of determining the amount of capital, the book value as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct as to the true capital of the organization... .
Properly construed, this means that the book value of undivided profits account in the stockholder's equity section of Taxpayer Dyer's balance sheet "shall be accepted as prima facie correct," as will be explained presently.

*1290 IV.

A.
Whether Dyer owes the additional franchise tax is solely a function of the best interpretation we can give to two state franchise tax statutes. See Anderson v. Lambert, 494 So.2d 370, 372 (Miss. 1986). By way of contrast, questions of accounting theory have no proper part in our decision, except that such theory has been incorporated into our law.[2] There is no natural law of tax liability. No brooding omnipresence or invisible hand informs our consideration of such cases. The amount of tax a taxpayer owes to this state is determinable solely by reference to the positive provisions of the tax laws of this state and the regulations of the State Tax Commission promulgated within the scope of its authority.
This said, we direct attention to the statutes in question as they read during the tax years in question  1980, 1981 and 1982. The first of these statutes reads as follows:
Section 27-13-9 Basis of Valuation.
The tax imposed, levied, and assessed, under the provisions of this chapter, shall be calculated on the basis of the value of the capital employed in this state for the year preceding the date of filing the return, ... measured by the combined issued and outstanding capital stock, surplus and undivided profits; provided, that in computing capital, surplus and undivided profits, there shall be included all true reserves, including all reserves other than for definite known fixed liabilities which do not enhance the value of assets; ... .
Miss. Code Ann. § 27-13-9 (1972).[3]
The other statute in issue in this case is Miss. Code Ann. § 27-13-11 (1972), which has been set forth in Part III above.[4]

B.
Our task is identification of Dyer's franchise tax base for the years in question, not by reference to any accounting or economic theory of what that base ought to be, but, instead, by reference to the statutory provisions quoted above. Section 27-13-9 provides that the base shall be "the value of the capital employed [by the taxpayer] in this state." Importantly, the statute goes further and provides that "capital employed in this state" is defined as (the statute uses the equivalent words "measured by")
the combined issued and outstanding capital stock, surplus and undivided profits; ... and all true reserves.
The initial statutory statement that the franchise tax base is the value of the capital employed by the taxpayer in this state is thus defined, indeed modified, so that "capital employed in this state" becomes *1291 composed of four items: capital stock, surplus, undivided profits, and true reserves. The question before us, then, is whether the deferred gain described above fits into one of the four statutory categories.
In its brief and again at oral argument, the Commission conceded that deferred gain is neither capital stock, nor surplus, nor true reserves. The Commission argues, however, that Dyer's "deferred gain account" is included within a correct reading of the term "undivided profits" as found in Section 27-13-9. We disagree.[5]
The Commission argues that the notes held by taxpayer Dyer are in fact capital enhancing assets, the value of which is employed in this state and, therefore, the amount thereof ought to be a part of the franchise tax base. It cannot be denied as a matter of economic reality that the Commission is correct. These notes do have value. And if Section 27-13-9 defined the franchise tax base as the value of all capital employed in this state, and stopped there, the Commission's argument would be powerful indeed. The problem with the argument is that the statute goes on, arguably inartfully, to define and modify and limit the phrase "capital employed in this state" to the four categories of capital "stock, surplus, undivided profits and reserves."
We need make clear that nothing turns on the labels. For example, we are told that the phrase "undivided profits" appearing in the statute really means "retained earnings." Our concern is not the label but that which is represented by the label. We consider that which underlies the label "undivided profits" to be limited to sums which have come into the possession and control of the taxpayer and which are presently available for division and distribution among the shareholders.
By the same token, nothing turns on the label given the Dyer account at issue. That label, it will be recalled, is "deferred gain account." Our focus is upon the nature of that account and the rights Dyer has in the equity it represents.
In the end, we consider the phrase "undivided profits" to require in the first instance that the equity represented thereby be "profits." The word profits connotes income. There is no reason on principle why income in the franchise tax context provided by Section 27-13-9 should be defined in a manner different from that employed in our income tax laws. It is appropriate, theretofore, to consider the manner in which the sale to Dyer Woodturning, Inc. and the promissory notes given taxpayer Dyer in return have been treated by taxpayer Dyer for income tax purposes.
Taxpayer Dyer employs what is known as the installment method of accounting. We regard it as quite important that both federal and state income tax laws expressly authorize taxpayers such as Dyer to employ the installment method of accounting for reporting income or gain from installment sales. See Miss. Code Ann. § 27-7-9(a)(3); and 27-7-15(2)(b) (Supp. 1986); 26 U.S.C.A. §§ 446, 453 (Supp. 1987). Under that method of accounting, the funds derived from an installment sale are income in the tax year in which the payments are in fact received by the taxpayer. Stated more precisely, our law requires that taxpayers electing to use this method for reporting the gain on an installment sale to report as income
that proportion of the payments received in that year which the gross profit (realized or to be realized when payment is completed) bears to the total contract price.
Miss. Code Ann. 27-7-15(2)(b)(ii) (Supp. 1986).
None of the sums contained in the disputed deferred gain account are taxable income for the years in question. Accordingly, they are not "profits" within the meaning of Section 27-13-9 as it read at the time. And if they are not "profits," it does not matter whether they have been divided.

C.
Our conclusion is buttressed by Section 27-13-11 which, it will be recalled, provides *1292 that "book value as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct." Properly applied, this means that the book value of the undivided profits account in the stockholder's equity section of Dyer's balance sheet "shall be accepted as prima facie correct." Suffice it to say that the method of accounting employed by taxpayer Dyer excludes from "undivided profits" the unreceived payments under the notes from Dyer Woodturning, Inc., that is, the sums represented by the deferred gain account.
To be sure, Section 27-13-11 does not place beyond the Commission's scrutiny any accounting method a taxpayer may choose to employ. The statute provides that the book value as determined by the taxpayer's regular methods of conducting its accounting affairs shall be "prima facie correct," not irrebuttably correct. If the taxpayer employed an accounting method which had no acceptance within the accounting profession, it may well be that the Commission could rebut the prima facie correctness of the taxpayer's books.
The Commission argues that we should employ for present purposes Generally Accepted Accounting Principles (GAAP), an accounting method which, we are told, would result in the entire principal amount of the notes from Dyer Woodturning, Inc. being included in Dyer's franchise tax base. Certainly GAAP is one accepted accounting method; one we understand to be required by the Securities Exchange Commission and to be used by many large publicly held corporations. On the other hand, the installment method of reporting sales such as those with which we are here concerned is another accounting method which, we are told, is used by many small closely held corporations. Although it is not mentioned specifically in our franchise tax laws, the installment method finds sanction in federal and state income tax laws. This renders it in our view respectable enough so that a taxpayer employing it enjoys the prima facie correctness afforded by Section 27-13-11. The only basis for error or invalidity in Dyer's accounts suggested by the Commission is that it has employed an accounting method with which the Commission disagrees. This is not sufficient to overcome the prima facie correctness of the taxpayer's books.
AFFIRMED
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
HAWKINS, P.J., not participating.
NOTES
[1] See Miss. Code Ann. § 27-3-3 and § 27-13-1(b) (Supp. 1986).
[2] See, e.g., Kentucky Power Co. v. Revenue Cabinet, 705 S.W.2d 904, 906 (Ky. 1986); Kroger Co. v. Department of Revenue, 614 S.W.2d 705, 708 (Ky. Ct. App. 1981); Broadwell Realty Corp. v. Coble, 291 N.C. 608, 231 S.E.2d 656, 661 (1977); National Standard Co. v. Department of Treasury, 384 Mich. 184, 180 N.W.2d 764, 769 (1970).
[3] In relevant part, Section 27-13-9 was amended, effective January 1, 1985, to read as follows:

The tax imposed, levied and assessed, under the provisions of this chapter, shall be calculated on the basis of the value of the capital employed in this state for the year preceding the date of filing the return, whether a calendar year or fiscal year, except where otherwise provided in this chapter, measured by the combined issued and outstanding capital stock, paid-in capital, surplus and retained earnings; provided, that in computing capital, paid-in capital, surplus and retained earnings, there shall be included deferred taxes, deferred gains, deferred income, contingent liabilities and all true reserves, including all reserves other than for definite known fixed liabilities which do not enhance the value of assets; ... . [Emphasis added]
See Miss. Laws, ch. 521, § 4 (1985).
[4] This statute, Miss. Code Ann. § 27-13-11 (1972), has also been amended and presently reads as follows

Book Value
For the purpose of determining the amount of capital, as defined in Section 27-13-9, Miss. Code of 1972, as amended, the book value of the accounts as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct, except where the commissioner determines that the book value does not properly reflect capital employed in this state and in that situation the commissioner's determination of capital shall be prima facie correct... .
Miss. Code Ann. § 27-13-11 (Supp. 1986).
[5] We have reviewed National Manufacture and Stores Corp. v. Fontenot, 86 So.2d 238 (La. App. 1956), cited to us in oral argument by the Commission, and do not find it persuasive.