# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00850-SCT

*MISSISSIPPI STATE TAX COMMISSION*

*v.*

*LADY FOREST FARMS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/95 |
| TRIAL JUDGE: | HON. H. DAVID CLARK, II |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL STRIBLING |
| ATTORNEYS FOR APPELLEE: | T. WALTON DALLAS |
| | THAD W. VARNER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKERS' COMPENSATION) |
| DISPOSITION: | AFFIRMED - 8/7/97 |
| MOTION FOR REHEARING FILED: | 8/18/97 |
| MANDATE ISSUED: | 10/9/97 |

EN BANC.

PRATHER, PRESIDING JUSTICE, FOR THE COURT:

## I. STATEMENT OF THE CASE

¶1. Following an audit of Lady Forest Farms, Inc. (LFF), the Mississippi State Tax Commission (MSTC) assessed LFF with a total of $47,079.50 in additional taxes, $8,945.14 in interest, and $4,707.95 in penalties for an alleged underpayment of state franchise taxes by said corporation during the fiscal years 1989 and 1990. LFF appealed to the MSTC Board of Review, which upheld the assessment of additional franchise taxes, interest, and penalties. LFF appealed said ruling to the MSTC, which affirmed the Board of Review, but reduced the amounts due by abating $706.20 of the penalties assessed.

¶2. LFF appealed said ruling to the Chancery Court of Scott County, and, following a bench trial, Chancellor H. David Clark, II issued an opinion on May 25, 1995, finding the actions of the MSTC in

the present case to have been arbitrary and capricious. The Chancellor accordingly vacated the additional assessment ordered by the MSTC, and the MSTC timely appealed to this Court.

## II. <u>ISSUES</u>

**A. Whether it was "arbitrary" or capricious" for the Mississippi State Tax Commission, hereinafter referred to as "MSTC." to calculate Lady Forest Farms, Inc.'s, hereinafter referred to as "LFF"'s, franchise tax by the inclusion in the tax base of the amounts listed in the Liabilities and Stockholders' Equity portion of LFF's Financial Statement as "Deferred Income Taxes" and "Deferred Section 481 Income" and the balance sheets of LFF's tax returns as "deferred income" and "deferred taxes?"**

¶3. The present case presents a juxtaposition of the federal income taxation and state franchise taxation schemes. The United States Congress issued a mandate for farms to convert from the cash to accrual method of accounting for federal income tax purposes, but, recognizing the disruptive nature of this change, Congress dictated that family farms maintain special suspense accounts[1] for accounts receivables and inventory under the cash method of accounting pursuant to § 447(i) of the Internal Revenue Code (IRC). This provision was designed to grant said family farms a "break" by permitting them to continue to maintain the then-existing inventory and accounts receivable under the cash method of accounting in a suspense account.

¶4. While accounts receivable and inventory are booked under the accrual method of accounting, they are not booked at all under the cash method, and a scheme whereby accounts and inventory are "booked" under the cash method is thus something of a contradiction in terms. Such was the dictate of IRC § 447(i), however, and the accountants for LFF duly complied with said federal mandate. The dictates of IRC § 447 were made even more complicated by a provision in IRC § 447(i) that the amount in the suspense account would remain constant *unless* the business of the family farm in question "contracted" (or declined) or until the farm ceased to be operated as a family farm. Thus, the benefits granted to family farms by Congress by permitting them to maintain § 447(i) suspense accounts were to be retracted to the extent that the family farms' business declined or, in the event that the family farms ceased to operate as such, the benefits would cease altogether and the accounts receivable and inventory would become taxable.

¶5. The primary issue in the present appeal is whether the §  447 suspense account is properly considered to constitute "capital employed in this state" for purposes of the Mississippi Franchise Tax. Section 27-13-9 of the Mississippi Code Annotated (1991), "Basis of Valuation" provides that:

The tax imposed, levied, and assessed, under the provisions of this chapter, shall be calculated on the basis of the value of the *capital employed in this state* for the year preceding the date of filing the return, whether a calender year, or fiscal year, except where otherwise provided in this chapter, measured by the combined issued and outstanding capital stock, paid-in capital, surplus and retained earnings; provided, that in computing capital, paid-in capital, surplus, and retained earnings, there shall be included deferred taxes, deferred gains, deferred income, contingent liabilities and all true reserves, including all reserves other than for definite known fixed liabilities which do not enhance the value of assets and amounts designated for the payment of dividends shall not be excluded from such calculations until such amounts are definitely and irrevocably placed to the credit of stockholders, subject to withdrawal on demand . . . .

(emphasis added). The MSTC ruled that the § 447 suspense account established by LFF constituted "capital employed in this state" and accordingly included said account in LFF's franchise tax base.

¶6. The scope of judicial review of the actions of an administrative agency is limited by the arbitrary and capricious standard. However, this Court will not defer to the MSTC's interpretation of a taxation statute when that interpretation is repugnant to the plain meaning thereof. *See Mississippi State Tax Comm'n v. Dyer Inv. Co.*, 507 So. 2d 1287 (Miss. 1987); *State Tax Comm'n v. Reliance Mfg Co.*, 111 So. 2d 225, 228 (Miss. 1959).

¶7. In the present case, this Court concludes that the § 447(i) suspense account does not fall under any of the classifications of "capital employed in this state" as set forth in § 27-13-9, and that the Chancellor was correct in finding the actions of the MSTC in ruling to the contrary to be "arbitrary and capricious." This Court arrives at this conclusion based in part upon our decision in *Dyer*, wherein this Court held that the MSTC had failed to establish that a note fell within the specifically provided categories of "capital employed in this state" set forth in § 27-13-9. Thus, this Court has expressed an intent in the past to interpret said statute somewhat narrowly. This Court held in *Dyer* that:

> The Commission argues that the notes held by taxpayer Dyer are in fact capital enhancing assets, the value of which is employed in this state, and therefore, the amount thereof *ought to be a part of the franchise tax base*. It cannot be denied as a matter of economic reality that the Commission is correct. These notes do have value. And if Section 27-13-9 defined the franchise tax base as the value of all capital employed in this state, and stopped there, the Commission's argument would be powerful indeed. The problem with the argument is that the statute goes on, arguably inartfully, to define and modify and limit the phrase "capital employed in this state" to the four categories of capital "stock, surplus, undivided profits and reserves".

*Id.* at 1291. Thus, this Court has expressed a hesitance to expand the definition of "capital employed in this state" beyond the categories set forth in § 27-13-9. In the present case, this Court is faced with a much more anomalous and complicated entity than the installment note which this Court held to not constitute "capital employed in this state" in *Dyer*, and the suspense account in the present case is even more clearly not properly considered to be capital employed in this state than the note in *Dyer*.

¶8. This Court's conclusion that the § 447 account does not constitute capital employed in this State is strengthened by the MSTC's contradictory arguments in the present case, as well as the contradictory testimony of the MSTC's experts regarding under which category of capital set forth in § 27-13-9 the account properly falls. The MSTC's confusion as to under which category the § 447 account falls is evidenced by the testimony of MSTC's experts, including Randy Ladner, Director of the MSTC's Sales Tax Division, who testified that "in my opinion it's deferred income; but if it's not deferred income then it's got to be a reserve."

¶9. The MSTC's primary argument before this Court is in fact that the § 447 account constitutes "deferred income." Eddie Beck, Administrative Assistant to the Chairman of the MSTC, however, appeared in his testimony to be less than convinced that the § 447 account did in fact constitute deferred income, testifying that "my solution would have been to call it retained earnings from conversion from cash to accrual method of accounting. That's the way I would have set it up." The

MSTC argues alternatively that the § 447 account should fit under the classification of "reserve." However, Mr. Beck testified on behalf of the MSTC that "I suppose you could set it up as a reserve, but, usually, a reserve implies you're reserving it for a specific item. This, apparently, was just part of their working capital, was not reserved for any particular item."

¶10. It is difficult for this Court to conclude that the § 447 suspense account does in fact constitute deferred income or a reserve within the statutory definition of said terms when the MSTC's own experts are unable to agree that the account is properly classified as such. The § 447(i) suspense account is a highly idiosyncratic creation of Congress which is difficult to grasp even in comparison to other provisions of the Internal Revenue Code. Mr. Chance, accountant for LFF, testified that he had never seen "any animal like it." Contrary to the MSTC's argument, it appears that the account represents neither deferred income nor deferred taxes, given that the suspense account will continue indefinitely under the provisions of § 447 until such time as LFF's business declines (at which point the account will shrink in proportion to the business) or until LFF ceases to operate as a family farm. LFF may continue indefinitely as a successful family farm, and it is thus very possible that the amounts in the account will never be recognized by LFF for federal income tax purposes and that the account thus represents an exclusion rather than a deferral.

¶11. LFF was merely complying with the dictates of Congress by switching to the accrual method of accounting but maintaining the suspense account on the cash basis. This Court is thus not faced with a case in which a taxpayer has deliberately constructed a suspense account in order to shelter franchise tax liability. The Chancellor found in his ruling that:

> MSTC employee witnesses concede that LFF never attempted to defraud the State of Mississippi by the filing of the tax returns in question, and acknowledge that the issue before the Court is arguable, the applicable statutes, the franchise tax return published by the MSTC and the books of LFF all being subject to differing interpretations.

Indeed, LFF was given no franchise tax "break" relative to the prior years in which it filed franchise taxes at all by complying with the § 447 mandate. To the contrary, the view as set forth by the MSTC would result in a large increase in franchise tax liability for LFF relative to prior years, and LFF argues that it should not have its franchise taxes increased as a result of a federally mandated change in its accounting practices.

¶12. The Commission argues that, in an economic sense, many of the assets represented in the suspense account do constitute capital employed in the state. This Court made clear in *Dyer*, however, that we are not faced with a question of economic definitions, but rather of statutory definitions. *Dyer*, 507 So. 2d at 1291. This Court in *Dyer* noted the limitations placed upon the scope of "capital used in this state" by the specific provisions of § 27-13-11, and the Legislature has full authority to change said provisions if it is of the view that said provisions serve to define "capital used in this state" too narrowly.

¶13. The MSTC notes that § 27-13-9 provides no exemption for cash method taxpayers, but it cites no statute or regulation which provides that cash method taxpayers are required to include accounts receivable and inventory in their franchise tax base. Further, the MSTC's argument that the statutes provide no exemption for inventory and accounts receivable held by cash method taxpayers loses its force when the MSTC itself acknowledges that it does not attempt to include said inventory and

accounts in the franchise tax base of cash method taxpayers. The testimony of Mr. Chance and other witnesses indicates that the cash method of accounting is, at least as a matter of practice, advantageous for franchise tax purposes, and the MSTC does not dispute this fact. There is thus, arguably, an element of arbitrariness in the MSTC's taxing the § 447 cash method accounts of inventory and accounts receivable while permitting other cash method taxpayers to not include accounts receivables and inventory in their franchise tax base.

¶14. Disregarding the arguable arbitrariness of this particular practice, however, the central point of this appeal remains: the unique, federally mandated creation of law that is the 447(i) suspense account does not properly fall under any of the categories of "capital employed in this state" as set forth by the Legislature, regardless of the accounting methods or issues involved. The Chancellor correctly found that the MSTC acted arbitrarily and capriciously in ruling to the contrary and his ruling is affirmed.

### B. Whether a taxpayer in appealing a decision of the MSTC to the Chancery Court pursuant to MCA § 27-13-45 may assert a basis for overturning a franchise tax assessment not asserted before the MSTC?

¶15. In preparing the books and franchise tax returns for LFF, Mr. Chance, not knowing how to classify the § 447(i) suspense account, listed the suspense account under the portion of the franchise tax return labeled as "deferred taxes" and "deferred income." The MSTC asserts in its second point of error that it relied on this labeling of the § 447(i) account and that LFF should not have been permitted to argue on appeal before the Chancellor and before this Court to the contrary. This Court noted in *Dyer*, however, that the labels placed upon financial information should not be given undue significance and that the MSTC should instead look to the substance of the information. *Dyer*, 507 So. 2d at 1290. Given the unusual nature of the newly mandated suspense account, it is understandable that Mr. Chance would have had difficulty deciding where to make a notation of the account.

¶16. In the event that the Commissioner is able to validly determine and establish that a taxpayer's books do not properly reflect capital employed in this state, § 27-13-11 of the Mississippi Code Annotated (1991), "Book Value," provides that:

> For the purpose of determining the amount of capital, as defined in Section 27-13-9, Mississippi Code of 1972, as amended, the book value of the accounts as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct, except where the commissioner determines that the book value does not properly reflect capital employed in this state and in that situation the commissioner's determination of capital shall be prima facie correct.

Thus, the Commissioner has the statutory power to make an independent determination of a taxpayer's amount of "capital employed in this state" in the event that he determines that the books of a given taxpayer do not reflect capital employed in this state. The Chancellor noted in his ruling that the MSTC had made no finding that the books of LFF did not accurately reflect capital employed in this state.

¶17. The MSTC protests the Chancellor's ruling on this issue, arguing that:

There was no reason for the MSTC to make a finding that LFF's book value of the accounts in issue did not properly reflect capital employed in this state. The balance sheets and financial statements listed the two accounts as deferred income and deferred taxes. The two accounts represented forms of capital employed in this state. At the MSTC hearing, LFF did not attack the substance of their books by arguing that the accounts were not actually deferred income or deferred taxes. Nothing in the record supports that such an argument was made. In order for the Chancellor to base his opinion on an inaction by the MSTC, the record must reflect that the MSTC had occasion to act.

¶18. The weakness in the MSTC's argument is that said commission should be expected to have the superior expertise to arrive at the correct method of determining a taxpayer's franchise tax base, regardless of the labeling of a particular account, especially when a significant issue involving the interpretation of a federal or state statute is involved. The MSTC was not faced in the present case with an isolated situation of a particular taxpayer, but rather with a federal mandate for certain family farms throughout this State to establish cash method accounts within the accrual method in a manner in which the MSTC apparently disapproves. Given the federal mandate in IRC 447, the MSTC should be expected to enact formal regulations, or at least a coherent and consistent policy, for assessing the franchise tax base of taxpayers who have complied with said mandate.

¶19. It does appear that the Chancellor should not have placed any substantial weight upon the MSTC's failure to make a finding that the books of LFF did not accurately reflect capital employed in this State, given that their primary argument in the present case is that the books of LFF do accurately reflect capital employed in this State and that the § 447 account falls under one of the classifications thereof. This finding on the part of the Chancellor constitutes only a part of his ruling, however, and the fact remains that the MSTC has not demonstrated that the § 447 account falls under one of the statutory classifications of capital employed in this state.

¶20. There is some indication that the MSTC's "true" position, contrary to its primary argument presented to this Court, is that the § 447 method of keeping part of a taxpayer's books on the cash method of accounting and the other part on the accrual method is *not* in fact an accepted method of accounting and does not accurately reflect capital used in this state. To wit, the MSTC argues that:

> The MSTC accepts the accrual method as an acceptable method of accounting. However, LFF's retroactive attempt to carve out an exception from the accrual method cannot be allowed. The Court was clearly erroneous in finding that the MSTC agreed with such a carving out of accounts. Every corporation converting from the cash to accrual basis would exempt all of its preexisting capital from the franchise tax. Even Mr. Chance admits that this is not allowed, though he maintains that it should be allowed for LFF. When the Court found that the cash method is a commonly accepted method of accounting it was right. However, the Court approved not of LFF keeping its books on the cash basis, but of LFF keeping two accounts on the cash basis within books kept on the accrual basis. There is no proof that such a method is a commonly accepted method of accounting, or otherwise exists.

The MSTC thus offers yet another alternative argument before this Court. The MSTC's primary argument is that the § 447 suspense account falls within one of the categories of "capital employed in this state," although the MSTC's experts are in conflict as to which classification of said term the

account falls under. By so arguing, the MSTC appears to accept that the bookkeeping method by which said account exists is a valid one, given that the MSTC used LFF's figures applicable to the § 447 account in determining the amount of LFF's franchise tax base.

¶21. The MSTC later argues, however, that it rejects the method of accounting by which the § 447 suspense account exists at all, and the MSTC thus casts doubt on the validity of its primary argument, or at least the accounting method upon which it based its own determination of LFF's franchise tax base in the present case. The MSTC's arguments, quoted above, seem to indicate that at least some of the experts at the MSTC have concluded that the § 447 method of carving out a cash basis account within the books of an accrual taxpayer does not accurately reflect capital used in this state. However, the Commissioner made no independent determination of LFF's franchise tax base in the present case, but, instead, used the figures determined under the method of accounting which the MSTC later attacks to assess LFF's franchise tax base in the present case.

¶22. In future cases, the MSTC may elect to proceed under the provisions of § 27-13-11, and this Court leaves a holding on the validity of such an approach for the appropriate time. However, the MSTC has chosen to argue in the present case that the § 447 suspense accounts falls under one of the statutory definitions of capital employed in this state, and it should not be heard to argue that its position on this issue of some importance[2] was thrust upon it by the books of a single taxpayer. This Court would be doing a disservice to both the taxpayers of this State and to this State's jurisprudence if we were to incorporate this taxpayer's erroneous classification of the account into law.

## III. CONCLUSION

¶23. Given the highly complex and unusual nature of the § 447 suspense accounts mandated by Congress, this Court understands that both the MSTC and the taxpayer were faced with a difficult task in interpreting and applying the IRC provisions in the present context. However, the Legislature has defined "capital employed in this State" through the use of specific classifications, and this Court concludes that the § 447 suspense account does not fall under any of the statutory classifications of said term, including "deferred income," and "reserves." Thus, this Court holds that the actions of the MSTC in so classifying the account were arbitrary and capricious, as well as being in conflict with the limited definition of "capital employed in this state" set forth by the Legislature. The ruling of the Chancellor in reversing the ruling of the MSTC is therefore affirmed.

¶24. **JUDGMENT IS AFFIRMED.**

**LEE, C.J., ROBERTS, SMITH AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., PITTMAN AND McRAE, JJ. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J.**

    **BANKS, JUSTICE, DISSENTING:**

¶25. I am compelled to dissent because, in my view, any reasonable assessment of the present

circumstances leads to the conclusion that the assets sought to be included in the base for franchise taxes are clearly capital employed in this state under the statute.

¶26. It is the task of the commission to determine the capital employed in this state. Miss. Code Ann. §§ 27-13-9, -13-11. While acknowledging that we are not bound to the labels placed upon financial data, the court succumbs to some supposed limitation of our statute to determine what constitutes capital. An over-reliance on what we did in *Mississippi State Tax Commission v. Dyer Inv. Co. Inc*., 507 So. 2d 1287 (Miss. 1987) appears to be the culprit. There this Court reasoned that equity in assets gained do not become retained earnings until they are earned for income tax purposes. 507 So. 2d at 1291. We held that if it was not a profit for income tax purposes it was not a profit, and thus not an undivided profit.

¶27. The statute has been changed from that applicable to the tax year in question in *Dyer Inv. Co. Inc.* For present purposes, "deferred gains, deferred income, contingent liabilities" are also included in the statutory definition of income. Profits are no longer excluded simply because they have not been subjected to income tax. Clearly, whatever may be said of a suspense account, representing $9.5 million in accounts receivable and inventory which are in place, albeit not yet included for income tax purposes because of federal tax law, it can represent no less than deferred income. That is exactly how the monies were referred to on the taxpayer's books. The plain fact is that these assets were acquired during the taxpayer's operations. They were "deferred income" for tax purposes while the taxpayer used the cash method of accounting for its tax revenue. It is still "deferred income" for income tax purposes because of a special exemption. It is clear that an increase in assets less the increase in liabilities is ordinarily considered profit or earnings, paid-in capital aside. To the extent that certain assets are excluded from the equation, earnings are reduced. Thus, the income represented by those assets is "deferred." None of the semantics employed by the taxpayer should be allowed to obscure this fact.

¶28. The Commission is clearly right in this instance. *A fortiori,* it should not be reversed under a proper application of our arbitrary and capricious standard of review. *Tower Loan of Mississippi Inc. v. Miss. State Tax Commission,* 662 So. 2d 1077 (Miss. 1995).

**SULLIVAN, P.J., PITTMAN AND McRAE, JJ., JOIN THIS OPINION.**


**McRAE, JUSTICE, DISSENTING:**

¶29. The Mississippi State Tax Commission has the authority to interpret statutory definitions and to determine what constitutes terms such as "capital employed in this state" under our tax statutes. Here we are faced with a complex matter, as the majority admits, about which the Legislature has provided virtually no instruction for the Commission to follow in making interpretations. The majority cannot say that the interpretation of the taxation statute is repugnant to the plain meaning of that statute when, in fact, the statute was written in a way that no clear meaning can be drawn from it. As such, the Commission should not be held to have acted arbitrarily and capriciously in making a good faith determination that the suspense account in question constituted "capital employed in this state." Absent an act of abuse, we should affirm the Commission's interpretation of Miss. Code Ann. § 27-13-9 and reverse the chancery court.

**BANKS, J., JOINS THIS OPINION.**

1. The suspense account was designed to hold funds in "suspense" for federal income taxation purposes until the occurrence of specified events.

2. Testimony indicates that there are relatively few corporations which elect to utilize the cash method of accounting, and the § 447 mandate applies to an even smaller subset of said corporations, i.e. family farms. Further, the § 447 mandate applied only on a "one time" basis, and this issue accordingly does not appear to be one of wide applicability.