# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-SA-00299-SCT

*FISHBELT FEEDS, INC.*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE f/k/a*
*MISSISSIPPI STATE TAX COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/15/2013 |
| TRIAL JUDGE: | HON. JANE R. WEATHERSBY |
| TRIAL COURT ATTORNEYS: | DAVID LEE GLADDEN, JR. |
| | JOHN H. DANIELS, III |
| | JON FRANCIS CARMER, JR. |
| | GARY WOOD STRINGER |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DAVID LEE GLADDEN, JR. |
| | JOHN H. DANIELS, III |
| | BLAYNE THOMAS INGRAM |
| ATTORNEYS FOR APPELLEE: | JON FRANCIS CARMER, JR. |
| | GARY WOOD STRINGER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 08/07/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. In this case of first impression, this Court must determine whether money a corporation receives as prepayment for future services is subject to franchise taxation during the year in which it is received. The Mississippi Department of Revenue ("MDOR") assessed additional franchise tax against Fishbelt Feeds, Inc. ("Fishbelt") for its failure to include a

"deferred revenue" account, which represented money it had received through prepaid contracts, in its franchise tax base. Fishbelt appealed MDOR's order to the Sunflower County Chancery Court, and the chancellor granted summary judgment to MDOR. On appeal to this Court, Fishbelt argues that the chancery court erred in granting summary judgment to MDOR and should have conducted a full evidentiary hearing on the issues presented. Fishbelt also argues that its "deferred revenue" account is excepted from franchise taxation. Finding no error, we affirm the chancery court's award of summary judgment to MDOR.

## STATEMENT OF THE CASE

¶2.	Fishbelt, a Mississippi "C" corporation, has been providing catfish feed to Mississippi catfish farmers since 1990. As part of its business, Fishbelt offered its customers the option of entering into prepaid contracts for the purchase of catfish feed. The customers would pay for the feed up front at the end of a given year, and Fishbelt would deliver the feed throughout the feeding season the following year. If a customer did not request feed during a given year, the balance of the prepaid contract would be carried over to the next year, or the customer could buy out the contract. The funds Fishbelt received through these contracts were deposited into Fishbelt's general operating account and were available for use by the corporation at all times. These funds were carried as current liabilities as "Deferred Revenue" on Fishbelt's annual financial statements and as "Pre-Paid Receivables Trade" on its monthly financial statements. Fishbelt did not recognize income during the fiscal year[1] it received these funds due to its outstanding contractual obligation to deliver the feed to its customers

---

[1]Fishbelt's fiscal year runs from April 1 through March 31.

during the next fiscal year. When Fishbelt actually delivered the feed, fulfilling its obligation under the contract, it would then deduct its expenses and recognize income from the contract.

¶3. The Mississippi State Tax Commission ("MSTC"), MDOR's predecessor, audited Fishbelt for the period from April 1, 2005, to March 31, 2008, and assessed $113,059 in additional franchise taxes to Fishbelt for its failure to include its "deferred revenue" account in its franchise tax base for the period in question. The MSTC's Review Board entered an order affirming the assessment. Aggrieved by the assessment, Fishbelt appealed the Review Board's findings to the full Commission. After a hearing on the matter, the full Commission issued an order affirming the assessment but abating penalties and interest, reducing Fishbelt's tax liability to $89,224.

¶4. Fishbelt paid the assessment under protest and appealed the MSTC's final order to the Sunflower County Chancery Court. By this point, MDOR had replaced the MSTC and was substituted in the litigation. The basis of Fishbelt's appeal was that its "deferred revenue" account did not qualify as deferred income because it had yet to fulfill its delivery obligations under the prepaid contracts and because the funds were not available for distribution to shareholders until those obligations had been met.

¶5. Approximately two years after filing its response to Fishbelt's appeal, MDOR moved for summary judgment, arguing that the only question to be decided by the court – whether Fishbelt's "deferred revenue" account was "capital employed within the state" subject to franchise tax – was a question of law that could be decided through summary judgment. In response, Fishbelt argued that the parties' dispute was factual in nature. Fishbelt also argued

3

that it was entitled by statute to a de novo evidentiary hearing before the chancery court, rendering summary judgment inappropriate.

¶6. After a hearing on the issues, the chancery court entered an order granting MDOR's motion for summary judgment. First, the trial court found that whether Fishbelt's "deferred revenue" account was subject to franchise tax was a question of law. Next, the court held that Fishbelt had failed to meet its burden to prove that its "deferred revenue" account was excepted from franchise tax, finding that the account in question met none of exceptions listed in the franchise-tax statute.

¶7. Aggrieved by the chancery court's ruling, Fishbelt appealed to this Court. We summarize Fishbelt's arguments on appeal as follows:

I. **Whether the issue before the chancery court could be resolved through summary judgment**.

II. **Whether Fishbelt's "deferred revenue" account is subject to franchise taxation.**

III. **Whether Fishbelt's "deferred revenue" account meets a statutory exception to franchise taxation.**

## STANDARD OF REVIEW

¶8. "Appellate review of an agency's decision is a limited inquiry." *Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 453 (Miss. 2010) (citing *Hinds Co. Sch. Bd. of Trs. v. R.B.*, 10 So. 3d 387, 394 (Miss. 2008)). "We will reverse the decision of an administrative agency only if the decision (1) was unsupported by substantial evidence; (2) was arbitrary and capricious; (3) was beyond the power of the administrative agency to make; or (4) violated the complaining party's statutory or constitutional right." *Miss. Methodist Hosp.*

4

*and Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 606 (Miss. 2009) (citing *R.B.*, 10 So. 3d at 394-95). "[Q]uestions of accounting theory have no proper part in our decision, except that such theory has been incorporated into our law." *Miss. State Tax Comm'n v. Dyer Inv. Co., Inc.*, 507 So. 2d 1287, 1290 (Miss. 1987) (rejecting the MSTC's assertion that, under Generally Accepted Accounting Principles (GAAP), the taxpayer's account in question should be subject to franchise taxation).

¶9. This Court reviews a lower court's grant or denial of summary judgment *de novo*. *Davis v. Hoss*, 869 So. 2d 397, 401 (Miss. 2004) (citing *Hurdle v. Holloway*, 848 So. 2d 183, 185 (Miss. 2003)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). The trial court must grant summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case as to which that party will bear the burden of proof at trial[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## DISCUSSION

### I. Whether the issue before the chancery court could be resolved through summary judgment.

¶10. As an initial matter, this Court must address Fishbelt's procedural argument that the chancery court was prohibited from granting MDOR's summary judgment motion. Fishbelt presents two bases for its argument that summary judgment is improper. First, Fishbelt

5

argues that the issue before the chancery court – whether Fishbelt's "deferred revenue" account should have been included in its franchise tax base – is a hotly disputed factual issue, not a legal one. This argument is without merit. Contrary to Fishbelt's assertions, we find that the parties do not dispute any material facts. The question presented here, whether a taxpayer owes additional franchise tax, can be determined solely through interpretation of the franchise-tax statutes. *Dyer*, 507 So. 2d at 1290. Statutory interpretation is a matter of law. *Hernandez v. Vickery Chevrolet-Oldsmobile Co., Inc.*, 652 So. 2d 179, 182 (Miss. 1995). Accordingly, whether Fishbelt's "deferred revenue" account was subject to franchise taxation is a question of law that could be resolved through summary judgment.

¶11. Next, Fishbelt argues that the statute governing judicial review of tax assessments prohibits the chancery court from granting summary judgment. A taxpayer aggrieved by an order of MDOR's Board of Tax Appeals is entitled to appeal that order to the chancery court. *See* Miss. Code Ann. § 27-77-7(1) (Rev. 2010). The petitioner's burden of proof and the chancery court's standard of review are statutorily prescribed:

> At trial of any action brought under this section, the chancery court shall give deference to the decision and interpretation of law and regulations by [MDOR] as it does with the decisions and interpretation of any administrative agency, but it shall try the case de novo and conduct a full evidentiary hearing on the issues raised.

Miss. Code Ann. § 27-77-7(5) (Rev. 2010). Fishbelt argues that the statute's use of the terms "de novo" and "full evidentiary hearing" preclude the chancery court from granting summary judgment in tax appeals. We find that Fishbelt's reliance on Section 27-77-7(5) is misplaced. First, we recently have held that the term "de novo," as used in Section 27-77-7(5), simply refers to the fact that "[t]he chancery-court proceedings mark the first time a

6

taxpayer may judicially challenge the legality of [MDOR's] final decision. In the absence of a prior proceeding, trial anew can occur." *Equifax, Inc. v. Miss. Dep't of Rev.*, 125 So. 3d 36, 42 (Miss. 2013). In addition, although Section 27-77-7(5) requires a full evidentiary hearing "[a]t *trial* of any action brought under this section," it does not follow that the statute automatically requires a trial in *every* tax appeal. Miss. Code Ann. § 27-77-7(5). The Mississippi Rules of Civil Procedure, including Rule 56, govern procedure in suits before the chancery court. Miss. R. Civ. P. 1. We find no support for Fishbelt's contention that a chancellor presiding over a suit brought under Section 27-77-7 must ignore the provisions of Rule 56 in a case where the petitioner cannot demonstrate a genuine issue of material fact.

¶12. In fact, this Court recently has affirmed the chancery court's grant of summary judgment in a tax appeal brought under Section 27-77-7. *See Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 455 (Miss. 2010). In *Buffington*, the only question to be resolved by the chancery court required the interpretation of a statute of limitations. *Id.* at 452. In affirming the chancery court's grant of summary judgment to MDOR, this Court specifically recognized that no factual disputes existed for the court to resolve, making summary judgment appropriate. *Id.* In this case, the parties dispute a single issue, one that can be resolved only through interpretation of the franchise-tax statutes. Fishbelt's mischaracterization of this legal question as a "factual dispute" is not sufficient to prevent summary judgment.

¶13. In sum, we hold that whether Fishbelt's "deferred revenue" account is subject to franchise tax is a question of law, and nothing in Section 27-77-7(5) prohibits the chancery court from granting summary judgment when no genuine disputes of material fact exist.

7

Accordingly, the chancery court had the authority to rule on MDOR's motion for summary judgment. Next, this Court must determine if the trial court reached the correct conclusion in granting MDOR's motion for summary judgment.

**II.** **Whether Fishbelt's "deferred revenue" account is subject to franchise taxation.**

¶14. A franchise tax is imposed on all "corporations, associations or joint-stock companies or partnerships treated as corporations" doing business within the State of Mississippi. Miss. Code Ann. § 27-13-5(1) (Rev. 2010). At issue in this case is the interpretation of Section 27-13-9 of the Mississippi Code, which provides the method for calculating the franchise tax. Section 27-13-9(1) provides that the franchise tax is "calculated on the basis of the value of the capital employed within the state for the year preceding the date of filing the return." Miss. Code Ann. § 27-13-9(1) (Rev. 2010) (emphasis added). "Capital employed within the state" is measured as the "combined issued and outstanding stock, paid-in capital, surplus and retained earnings" of the corporation. *Id.* In addition, the following items must be included in calculating the franchise-tax base: "deferred taxes, deferred gains, deferred income, contingent liabilities and all true reserves, including all reserves other than for definite known fixed liabilities which do not enhance the value of assets[.]" *Id.* This Court has instructed that, in determining whether a specific account fits within one of the above categories of capital, the focus is not on the label the taxpayer gives to the account, but "upon the nature of the account and the rights [the taxpayer] has in the equity it represents." *Dyer*, 507 So. 2d at 1291. Thus, this Court is not bound by Fishbelt's label of "deferred revenue" for the funds in question.

8

¶15. In determining the most reasonable interpretation of Section 27-13-9(1), this Court must give deference to MDOR's interpretation of its laws and regulations "as it does with the decisions and interpretation of any administrative agency[.]" Miss. Code Ann. § 27-77-7 (Rev. 2010). "[W]hen determining the most reasonable and appropriate interpretation of a statute, 'the agency's interpretation is an important factor that usually warrants strong consideration.'" *Diamond Grove Ctr., LLC v. Miss. State Dep't of Health*, 98 So. 3d 1068, 1072 (Miss. 2012) (quoting *Queen City Nursing Ctr., Inc. v. Miss. State Dep't of Health*, 80 So. 3d 73, 84 (Miss. 2011)). "If an agency's interpretation of a statute is contrary to the unambiguous language or best reading of a statute, however, this Court will not afford it any deference." *Dialysis Solution, LLC v. Miss. State Dep't of Health*, 31 So. 3d 1204, 1211 (Miss. 2010) (citing *Gill v. Miss. Dep't of Wildlife Conservation*, 574 So. 2d 586, 593 (Miss. 1990)).

¶16. In assessing additional franchise tax to Fishbelt, MDOR determined that Fishbelt's "deferred revenue" account actually represented deferred income to the corporation. MDOR argues that "deferred income," as used in Section 27-13-9, refers to money received by a corporation but not yet earned. The parties agree that the money represented by Fishbelt's "deferred revenue" account had not been earned, for the purposes of income taxation, in the year it was received. Accordingly, MDOR contends that Fishbelt's "deferred revenue" account represents taxable deferred income. In support of this argument before the chancery court, MDOR submitted the affidavit of Jan Craig, an associate commissioner for income and property tax with MDOR. Craig stated that, throughout her employment with MDOR, the agency consistently included "deferred revenue" accounts in the franchise-tax base and

treated deferred income and deferred revenue as synonymous terms for money received by a corporation but not yet earned. MDOR also presented the court with three references providing essentially identical definitions for deferred revenue and deferred income.[2] The references provided to the court matched MDOR's definition of deferred income. Finally, MDOR pointed out that one of Fishbelt's experts admitted during his deposition that he was aware of accounting dictionaries that defined deferred revenue and deferred income interchangeably.

¶17. After a thorough reading of Section 27-13-9(1), we find that MDOR's interpretation is reasonable and consistent with the plain language of the franchise-tax statutes. MDOR's definition of deferred income is identical to Black's Law Dictionary's definitions for deferred revenue, prepaid income, and unearned income: "income received but not yet earned." *Black's Law Dictionary* 778-79 (8th ed. 2004).[3] The Dictionary of Finance and Investment Terms also supports MDOR's argument, as it provides the following definition of "unearned income":

> Income received but not yet earned, such as rent received in advance or other advances from customers. Unearned income is usually classified as a CURRENT LIABILITY on a company's BALANCE SHEET, assuming that it will be credited to income within the normal accounting cycle. *See also* DEFERRED CHARGE.

---

[2] *Webster's Third New International Dictionary* 591 (unabr. 1986); *Black's Law Dictionary* 421 (6th ed. 1990); John Downes & Jordan Elliot Goodman, *Dictionary of Finance and Investment Terms* 494 (3d ed. 1991).

[3] Specifically, Black's Law Dictionary defines "prepaid income" as "[i]ncome received but not yet earned. – Also termed *deferred revenue*." *Black's Law Dictionary* 778 (8th ed. 2004) (emphasis in original).

John Downes & Jordan Elliot Goodman, *Dictionary of Finance Terms* 494 (3d ed. 1991).[4]

Given the foregoing definitions, MDOR acted reasonably in interpreting the "deferred income," as used in Section 27-19-3, as money received by a corporation but not yet earned. A prepayment for future services clearly fits within this definition. Therefore, the funds represented by Fishbelt's "deferred revenue" account – regardless of the label ascribed to it – must be included in its franchise-tax base for the year those funds were received.

¶18.    Fishbelt argues that the term "deferred income" must refer to a "netted term," calculated by subtracting deferred expenses from deferred revenue. We find this argument to be without merit, as the franchise-tax statutes clearly reject such a calculation. Franchise tax is computed "on the basis of the *previous accounting period* closing immediately prior to the accrual date, to be known as the measuring date." Miss. Code Ann. § 27-13-17(1) (Rev. 2010) (emphasis added). Therefore, the value of a corporation's "deferred income" for a given year is not affected by expenses incurred during any future accounting period. Fishbelt's own financial records also contradict its argument. To determine the amount of capital that is to be included in the franchise-tax base, "the book value of the accounts as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct[.]" Miss. Code Ann. § 27-3-11 (Rev. 2010).[5]   As one of Fishbelt's experts

---

[4] The word "revenue" is listed in parentheses next to "income" for the definition of "unearned income." In addition, it appears that the terms "deferred" and "unearned" are used interchangeably by this source, as the definition of "deferred charge" indicates that "the opposite is *deferred income*, such as advance rent received." *Id*. at 102.

[5] "'Book value' is the value at which an asset is carried on the balance sheet." ***Tower Loan of Miss., Inc. v. Miss. State Tax Comm'n***, 662 So. 2d 1077, 1083 (Miss. 1995) (citing *Black's Law Dictionary* 126 (abr. 6th ed. 1991)).

admitted in his deposition, the costs and expenses associated with completing its obligations under the prepaid contracts were not accounted for in the book value of its "deferred revenue" account at the end of the fiscal year. Because Sections 27-13-9 and 27-13-11 require the franchise tax to be calculated for the year preceding the date of the filing of the return, "deferred income" cannot represent a netted term, as expenses cannot be deducted retroactively.

### III. Whether Fishbelt's "deferred revenue" account meets a statutory exception to franchise taxation.

¶19. Fishbelt argues that its "deferred revenue" account represents either a debt to the corporation or a reserve for a "definite known fixed liability," both of which are excluded from the calculation of franchise tax. *See* Miss. Code Ann. § 27-13-9(1). While true reserve accounts are subject to franchise tax, Section 27-13-9(1) specifically excludes from taxation reserves "for definite known fixed liabilities which do not enhance the value of the assets." *Id.* In addition, "there shall not be included in the value of the *capital stock* any *sums* representing debts, notes, bonds, and mortgages due and payable, except where notes or debts due are provided by an affiliated company as a substitute for stock or paid-in capital[.]" *Id.* (emphasis added). Regarding tax exemptions, this Court has held,

> Since taxation is the rule and exemption is the exception, and since exemptions from taxation are not favored, [the] general rule is that a grant of exemption from taxation is never presumed; on the contrary, in all cases having doubt as to legislative intention . . . [the] presumption is in favor of the taxing power, and [the] burden is on claimant to prove or establish clearly his right to exemption, bringing himself clearly within terms of such conditions that statute may impose.

12

*Miss. Dep't of Rev. v. Pikco Finance, Inc.*, 97 So. 3d 1203, 1210 (Miss. 2012) (quoting *Miss. State Tax Comm'n v. Med. Devices, Inc.*, 624 So. 2d 987, 990 (Miss. 1983)) (internal citations omitted).

¶20.    We find that Fishbelt has failed to present "clear proof" that its "deferred revenue" account represents one of the aforementioned exceptions to the franchise tax. *See Trunkline Gas Co. v. Miss. State Tax Comm'n*, 119 So. 2d 378, 379 (Miss. 1960).    First, Fishbelt's "deferred revenue" account does not represent a "debt" within the meaning of Section 27-13-9(1).  As an initial matter, debts are excluded only from the value of *capital stock*; as MDOR correctly argues, Fishbelt's "deferred revenue" account represents deferred income, not capital stock.  *See* Miss. Code Ann. 27-13-9(1) (Rev. 2010).  Moreover, a plain reading of Section 27-13-9 reveals that the statute's use of "debt" refers to the payment of money, not the performance of a service.  Section 27-13-9 specifically excludes from taxation "*sums representing debts*" and groups that term with "notes, bonds and mortgages due and payable," all of which represent the  promise to pay a sum of money. *Id.* (emphasis added).  Thus, Fishbelt's "deferred revenue" account cannot be excepted from franchise taxation as a debt.

¶21.    With regard to the "fixed-liability reserve" exception, this Court previously has analyzed certain accounts on a taxpayer's books to determine if they qualified as reserves for definite known fixed liabilities.  *Gencorp, Inc. v. Miss. State Tax Comm'n*, 543 So. 2d 657 (Miss. 1989).  In *Gencorp*, the MSTC assessed additional franchise tax against the taxpayer by including the following accounts in the taxpayer's franchise tax base: (1) deferred federal

and state income tax accounts;[6] (2) a workers' compensation claims payable account; and (3) an account for loss expected to be incurred during the shutdown of various manufacturing plants owned by the taxpayer. *Id.* at 658-59. These accounts were carried as liabilities on the taxpayer's financial records in accordance with GAAP, but the funds represented by the accounts were available for use by the taxpayer at all times. *Id.* at 660-61. The taxpayer argued that these accounts represented reserves for definite known fixed liabilities, but this Court rejected this argument, finding that these liabilities were neither known, definite, nor fixed. *Id.* at 661. The Court reasoned that it was conceivable that the taxpayer would never have to pay the amounts represented by these accounts, because it was possible the taxpayer could fail to earn income, have a workers' compensation claim filed against it, or close a manufacturing plant in a given year. *Id.* Accordingly, this Court affirmed the chancellor's finding that the taxpayer's accounts represented contingent liabilities that should have been included in the taxpayer's franchise-tax base. *Id.*

¶22. We find that Fishbelt has failed to prove that its "deferred revenue" account falls within the "fixed-liability reserve" exception to franchise tax. First, and most tellingly, Fishbelt's own experts admitted that its "deferred revenue" account could not be considered a reserve account because the funds represented by the account were deposited in the corporation's general operating bank account and therefore were available for general use by the corporation. In addition, Fishbelt's "deferred revenue" account is similar to the

---

[6] We note that deferred taxes, deferred gains, and deferred income were not included in the calculation of franchise tax under the version of Section 27-13-9 that was in effect at the time *Gencorp* was decided. *See id.* at 659. However, the *Gencorp* Court's discussion of the "fixed-liability reserve" exception is still valid.

accounts at issue in *Gencorp*. The money represented by the "deferred revenue" account was received by Fishbelt as prepayment for services it would perform the following year. It is conceivable, and even contemplated in Fishbelt's contracts, that a customer could fail to exhaust the entirety of its prepayment in a given year. In such a case, the customer had the option either to buy out the balance of its contract or to carry the balance over to the next year. If a customer carried the balance of its contract over to the next year, that money would remain in Fishbelt's general operating account, available for general use by the corporation. Thus, we find that Fishbelt's "deferred revenue" account is not excepted from franchise taxation as a true reserve representing known, definite, and fixed liabilities.

## CONCLUSION

¶23.    For the foregoing reasons, we affirm the chancery court's grant of summary judgment to MDOR.

¶24.    **AFFIRMED.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

15