Scott Building Supply Corp., et al. *v.* Mississippi State Tax Comm.

No. 40875 January 26, 1959 108 So. 2d 557

*Ben Ferrell Mitchel,* Cleveland, for appellant.

24

*John E. Stone,* Jackson, for appellee.

KYLE, J.

This case is before us on appeal by Scott Building Supply Corporation, hereinafter referred to as the appellant, and the surety on its appeal bond, from a decree of the Chancery Court of the First Judicial District of Hinds County sustaining an additional assessment of franchise taxes made by the Chairman of the State Tax Commission against the appellant, Scott Building Supply Corporation, for the years 1954, 1955 and 1956, and awarding a judgment against the appellant and said surety for the amount claimed to be due.

The record shows that the appellant, Scott Building Supply Corporation, is a Tennessee corporation, qualified to do business in Mississippi; that its main office and place of business is located at Cleveland, in Bolivar County, Mississippi; that all of its business is transacted within the State of Mississippi; and that all of its assets are situated in the State of Mississippi.

The record also shows that during the year 1949 the appellant applied to the Cleveland State Bank and the Reconstruction Finance Corporation for a loan in the sum of $100,000, and that the application was finally approved by the Reconstruction Finance Corporation. Before agreeing to participate in the loan, however, the Reconstruction Finance Corporation required that an appraisal be made of the appellant's assets, and that the appellant submit balance sheets showing its assets valued according to the appraisal, and that the appellant also agree to submit periodic financial reports to the Reconstruction Finance Corporation from time to time based upon the appraised value of its assets. An appraisal of the assets of the appellant corporation was duly made in compliance with the Reconstruction Finance Corporation requirements; and after the making of the appraisal the appellant corporation caused to be entered upon its books the increased valuations of the assets as shown by the appraisal, and the amount of the increase over and above the cost values was entered on the books as a "Revaluation Surplus". The loan was made by the Cleveland State Bank pursuant to a participation agreement entered into by the Reconstruction Finance Corporation, by the terms of which the Reconstruction Finance Corporation agreed to participate in an amount equal to 70 percent of the loan. The loan was secured by a mortgage deed of trust on the physical properties of the appellant corporation and additional collaterals, which included an assignment of a $25,000 life insurance policy on the life of George E. Scott, principal stockholder of the appellant corporation, and also an assignment of 350 shares of the capital stock of the Merigold Building Supply Company, which was owned by the appellant corporation, and a mortgage deed of trust on the land and buildings and automotive equipment owned by the Merigold company, and also the unconditional guarantee of George E. Scott and Mrs. Sadie W. Scott.

In the course of an audit of the appellant's franchise tax returns for the years 1954, 1955 and 1956 by representatives of the State Tax Commission, it was found that the appellant had failed to include in the measure of the tax shown to be due for each of those years the increase in the value of the corporate assets reflected in the appraisal made at the instance of the Reconstruction Finance Corporation in 1949 and the "revaluation surplus" shown on its balance sheets and its books of account; and on August 24, 1956, the Commissioner made an additional assessment of franchise taxes against the appellant for each of those years aggregating the sum of $710.35, and notified the appellant of the additional assessment. The assessment was based upon information obtained from the appellant's balance sheets and other records relating to the increased valuations of the corporate assets shown by the above mentioned appraisal. The appellant protested the additional assessment, and after a hearing the Commissioner disallowed the protest. An appeal was taken to the State Tax Commission, and the Commission on review overruled the appellant's objections and approved the assessment. The appellant then filed its petition in the Chancery Court requesting a hearing of the case on its merits, as provided by Section 7 of Chapter 412, Laws of 1956 (Section 9329, Miss. Code of 1942 Rec.).

In its petition for a hearing of the case on its merits the appellant stated the facts relating to the loan obtained by the appellant from the Reconstruction Finance Corporation in 1949 and the appraisal of the corporate assets at that time. The appellant stated that the appraisal was made pursuant to a requirement of the Reconstruction Finance Corporation, and that a pro forma balance sheet was submitted to the Reconstruction Finance Corporation showing the assets valued in accordance with the appraisal values. The appellant also stated in its petition that the requirements of the loan agency included a re-

quirement that the appellant submit periodic financial reports to the loan agency based upon the appraisal values, and that, for convenience in maintaining a permanent record of the appraisal values, as distinguished from the values which reflected the cost of the assets, the appellant entered upon its books of account the amounts by which the appraised values exceeded the cost values, and in order to balance its books the appellant entered the same amount on the credit side of its books as a "Revaluation Surplus". The appellant stated that, in filing its annual franchise tax returns since 1949, it had not included the "revaluation surplus" in the measure of the tax shown to be due, as defined in Section 9317, Miss. Code of 1942 Rec., and because of its failure to do so the State Tax Commission had imposed an additional assessment for each of the years 1954, 1955 and 1956, amounting to $710.35. The appellant alleged that the additional assessment was unlawful for the reason that the "revaluation surplus", as shown in the appellant's books of account, was a reserve representing a valuation account, a mere bookkeeping entry, and was therefore specifically exempt by statute, and that the commission, in making the additional assessment, was seeking to levy the tax upon the value of the appellant's property, instead of the "value of the capital used, invested or employed within the State," as provided by the statute.

The appellee in its answer admitted that the additional assessment of franchise taxes had been made against the appellant because of the failure of the appellant to include in the measure of the tax shown to be due in the returns filed the increased value of the corporate assets reflected in the appraisal made at the instance of the Reconstruction Finance Corporation prior to the making of the loan to the appellant in 1949, and shown as a "revaluation surplus" on the appellant's books of accounts. The appellee in its answer denied that the "revaluation surplus" represented a mere bookkeeping en-

try, and the appellee averred in its answer that the appellant had obtained the loan from the Reconstruction Finance Corporation only after its property had been appraised and its true value placed upon the books of account, and that the entry reflected the increased values of the appellant's capital assets. The appellee denied that the assessment was invalid, and asked that the petition be dismissed.

It was agreed at the beginning of the hearing before the chancellor that there was no dispute as to the amount of the tax claimed to be due. The appellant's attorneys admitted that, if the appellant owed any of the tax, it owed all of it.

N. L. Cassibry, Sr., President of the Cleveland State Bank, was called to testify as a witness for the Scott Building Supply Corporation. Cassibry stated that the application for a deferred participating agreement, whereby the Reconstruction Finance Corporation would participate in the $100,000 loan up to 70 percent, was filed by the Cleveland State Bank with the Reconstruction Finance Corporation on May 11, 1949, on RFC Form L-377. The names of the borrowers, as stated in the application, were Scott Building Supply Corporation and Merigold Building and Supply Company. The application stated that the business of Scott Building Supply Corporation was "retail lumber, building supplies and home appliances, including construction of homes." The proceeds of the loan were to be used in paying current bills and to supply additional working capital. The collateral offered to secure the loan was a first mortgage on the land, buildings and equipment, and the repayment of the loan was to be guaranteed by Geoge E. Scott, principal stockholder. On the reverse side of the application there were detailed instructions, which included a requirement that the bank submit with the application a borrower's financial statement, and also a signed and dated copy of an appraisal of the collateral made by the

bank, or by an independent appraiser satisfactory to the bank accompanied by a schedule showing the cost, net book value and appraised value, separately, of the land, buildings, machinery and equipment, etc. Cassibry stated that the appraisal was made by the Noel Lumber Company, and the appraisal report was offered in evidence as an exhibit to Cassibry's testimony. The report showed separately the value of buildings at Cleveland, the value of buildings at Merigold, and the value of scales, shop equipment and other equipment, in the total sum of $127,170.

On July 26, 1949, the Reconstruction Finance Corporation, in a letter addressed to the Cleveland State Bank, approved the application for the deferred participation agreement, subject to the terms and conditions stated in the letter. Those terms and conditions included detailed instructions relating to the execution and delivery of a first mortgage deed of trust on the land, buildings and automotive equipment owned by the Scott Building Supply Corporation, and the execution and delivery of other instruments of security which were to accompany the mortgage deed of trust as additional security for the loan, including a pledge and assignment of materialmen's liens on seven dwellings constructed under FHA commitment; a pledge and assignment of 350 shares of capital stock with the Merigold Building and Supply Company; the guaranty of the Merigold Supply Company which should be supported by first deed of trust on the property of the company; a pledge and assignment of a life insurance policy in the amount of $25,000 covering the life of George E. Scott; a pledge and assignment of mortgage note of J. L. McLelland in the amount of $8,000; and the unconditional guaranty of payment of George E. Scott and Mrs. Sadie W. Scott. Cassibry stated that the additional collateral mentioned above was provided in due course.

Cassibry stated that the appraisal of the physical properties was based on the replacement values. He did not think that the replacement cost would necessarily indicate the market value. Cassibry stated that the bank did not require of the Scott Building Supply Corporation that the "revaluation surplus" and appraisal increase in the value of the property be entered on the books of the corporation. He stated, however, that the appraisal was required by the Reconstruction Finance Corporation and that the Reconstruction Finance Corporation asked for a balance sheet, and the above mentioned entries appeared on the balance sheet, and he understood that they reflected a true statement of the value of the assets of the corporation.

W. Hampton King, a public accountant, who served as an accountant for the Scott Building Supply Corporation from September 1947 to March 1953, testified that the books of the corporation were kept under his supervision, and that in his opinion there was no change in the value of the capital employed, surplus and undivided profits of the corporation as a result of the write-up of the assets after the appraisement was made in 1949. He was then asked why he put the appraisal write-up on the books. His answer was, that he put the write-up on the books chiefly as a matter of convenience for future reference; that the Reconstruction Finance Corporation would continue to require pro forma balance sheets; and that he thought the write-up should be placed on the books, so that the asset side of the ledger would reflect the appraised valuation, and the liability or credit side would reflect the same appraisal as a "revaluation surplus". King stated that the appraisal was made as a part of the whole process of getting the loan, some one required it to be made, and he entered it upon the books of the corporation.

The chancellor held that the State Tax Commission was correct in assessing the additional franchise tax

against the appellant upon the basis of the appraisal of the assets submitted by the appellant to the Reconstruction Finance Corporation and upon which the Reconstruction Finance Corporation relied and acted in approving the large loan to the appellant.

The main point argued by the appellant's attorneys as ground for reversal of the judgment of the lower court is, that the franchise tax imposed by Section 9313 and 9314, Code of 1942 Rec., is imposed on the value of the capital used, invested or employed within this state, which means that the tax in this case is to be measured by the corporation's capital stock, surplus and undivided profits, and that the restrictive terms of Section 9318, Code of 1942 Rec., with respect to "book value", limits surplus to that which is earned, or which has been contributed in money or property; and that the "revaluation surplus", which the corporation entered on the credit side of its ledger, was a mere book entry or "A reserve representing a valuation account", and not such surplus as was required to be included in the measure of the value of the capital used, invested or employed within this state, for the purpose of calculating the amount of the franchise tax.

But we think there was no error in the judgment of the lower court sustaining the additional assessment.

■■ ■ In construing a statute the Court must seek to ascertain the legislative intent from the statute as a whole, and effect must be given to all of its provisions. The appellant's attorneys, in their argument on the point mentioned above, in our opinion, have failed to take into account the provisions of Section 9317, Code of 1942 Rec., in which the legislature has defined the basis upon which the tax shall be calculated.

Section 9317, Code of 1942 Rec., provides as follows: "Basis of valuation.—The tax imposed, levied and assessed, under the provisions of this Act, shall be calculated on the basis of the value of the capital employed in this

State for the year preceding the date of filing the return, whether a calendar year, or fiscal year, except where otherwise provided in this Act, measured by the combined issued and outstanding capital stock, surplus and undivided profits; provided, that in computing capital, surplus and undivided profits, there shall be included all true reserves, including all reserves other than for definite known fixed liabilities which do not enhance the value of assets; and amounts designated for the payment of dividends shall not be excluded from such calculations, until such amounts are definitely and errevocably placed to the credit of stockholders, subject to withdrawal on demand; provided, however, there shall not be included in the value of the capital stock, any sums representing debts, notes, bonds and mortgages due and payable; nor depreciation reserves, bad debt reserves, nor reserves representing valuation accounts. * * *''

It can be readily seen that the statute does not provide that the tax shall be calculated on the basis of ''the invested capital, earned or paid in surplus and undivided profits'', but on the basis of ''the value of the capital employed in this State for the year preceding the date of filing the return, * * * measured by the combined issued and outstanding capital stock, surplus and undivided profits;'' and that ''in computing capital, surplus and undivided profits, there shall be included all true reserves, including all reserves other than for definite known fixed liabilities, which do not enhance the value of assets.''

 It is the value of the capital employed in this state which is protected by the government and the laws of this state, that is to be used as the basis upon which the tax is to be calculated.

In the case of Craig v. Columbus & Greenville Railway Co., 192 Miss. 461, 467, 5 So. 2d 681, this Court said in regard to the franchise tax: ''While this tax is not on property as such, it is based on the value of property in

which the corporation's capital is invested. Consequently, of what this property consists and its value must be ascertained before the payment of the tax can be coerced in any manner * * *.''

In the case of Southern Package Corporation v. State Tax Commission, 195 Miss. 864, 873, 15 So. 2d 436, which was another franchise tax case, the Court in its opinion said: ''Corporations enjoy privileges and immunities not possessed by natural persons, and for the security and protection, by its laws and authority, of such privileges and immunities, the state, for revenue and as a quid pro quo, may levy upon corporations which carry on any substantial part of their business activities in the state, an exaction called a franchise tax. The amount of the franchise tax and the mode of the measurement thereof are matters which rest within legislative discretion, when not burdensome or oppressive and when solely for revenue. The usual mode of measurement is to look to the amount of the capital of the corporation employed or so situated as to be privileged to be employed in the state, and in determing the amount of the capital, the total of the capital stock, stated surplus, and undivided profits of the corporation is used prima facie as a determinative factor. Such, as to the features mentioned, is our Franchise Tax Law, Chapter 121, Laws 1934.'' The Court also said in that case: ''The capital of a corporation is its tangibles, the aggregate of its property and assets of all kinds, while its capital stock is the evidence of rights in such property. * * * It is immaterial, therefore, what name or characteristic the particular capital stock which represented this timber may have or what rights it confers inter sese—it is enough, so far as the franchise tax is concerned, that it represents or evidences capital used, invested, or employed within this state, and it is undisputed that all the capital timber which this stock represents is situated within this state.''

The legislature did not undertake to define in the franchise tax statute what is meant by the term "surplus". But that term has been defined in the opinions of many courts. Perhaps the best known definition of the term is that stated by Justice Brandeis in Edwards v. Douglas, 269 U. S. 204, 214, 46 S. Ct. 85, 88, 70 L. Ed. 235, which is as follows: "The word 'surplus' is a term commonly employed in corporate finance and accounting to designate an account on corporate books.* * * The surplus account represents the net assets of a corporation in excess of all liabilities, including its capital stock. This surplus may be 'paid-in surplus,' as where the stock is issued at a price above par; it may be 'earned surplus,' as where it was derived wholly from undistributed profits; or it may, among other things, represent the increase in valuation of land or other assets made upon a revaluation of the company's fixed property. See LaBelle Iron Works v. United States, 256 U. S. 377, 385, 41 S. Ct. 528, 65 L. Ed. 998." See also Willcuts v. Milton Dairy Co., 275 U. S. 215, 48 S. Ct. 71, 72 L. Ed. 247; Randall v. Bailey, et al. 288 N. Y. 280, 43 N. E. 2d 43; United North & South Development Co. v. Heath, 78 S. W. 2d 650; Board of Supervisors of Jefferson County v. Jefferson County Bank of Fayette, 171 Miss. 50, 156 So. 599.

■■ The revaluation of the corporate assets in this case was not a revaluation based merely on the subjective feeling of management that the recorded book values of the building and equipment were so grossly unrealistic that they should be revised. The revaluation was based upon an appraisal of the assets made by an independent appraiser pursuant to the requirement of the Reconstruction Finance Corporation, and the revaluation increase was entered on the appellant's books of account and the balance sheet submitted to the Reconstruction Finance Corporation. It is not claimed that the corporate assets were overvalued as a result of the appraisal, or that the "revaluation surplus" shown on the books did

not reflect properly the amount of the increase in value of the capital assets shown by the appraisal. Section 9318, Code of 1942 Rec., provides that, "In all cases for the purpose of determining the amount of capital, the book value as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct as to the true capital of the organization." We think the "revaluation surplus" represented a part of the capital used, invested or employed within this state, within the meaning of Section 9317, Code of 1942 Rec.

Other points have been argued in the appellant's brief, but none of those points are of sufficient importance to require a discussion by us in this opinion.

It is admitted that the "revaluation surplus" shown on the appellant's books of account was not included in the measure of the tax shown to be due in the franchise tax returns filed by the appellant for the years 1954, 1955 and 1956; and we think the State Tax Commission was warranted in making the additional assessment complained of.

We find no reversible error in the record, and the judgment of the lower court is, therefore, affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.