662 So.2d 1077 (1995)
TOWER LOAN OF MISSISSIPPI, INC.
v.
MISSISSIPPI STATE TAX COMMISSION.
No. 94-CA-00508-SCT.
Supreme Court of Mississippi.
October 19, 1995.
*1079 Leonard D. Van Slyke, Jr., Denise F. Schreiber, Alston Rutherford Tardy & Van, Jackson, for appellant.
Brenda G. Cameron, Bobby R. Long, Jackson, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
The Mississippi State Tax Commission (hereinafter the "Commission") assessed Tower Loan of Mississippi, Inc. (hereinafter "Tower Loan") additional franchise taxes for the years 1985, 1986 and 1987. Tower Loan appealed to the Board of Review of the State Tax Commission which upheld the assessment of additional franchise taxes, interest and penalties by Order dated July 31, 1989. Tower Loan subsequently appealed to the full Commission which affirmed the Board of Review's finding by Order dated April 25, 1990. The total assessment as of June 30, 1990 was $47,965.23. Aggrieved by the Commission's order, Tower Loan appealed to the Chancery Court of the First Judicial District of Hinds County, Mississippi. After a trial on the matter, the chancellor, by a Memorandum Opinion and Order dated April 26, 1994, affirmed the order of the Commission assessing additional xfranchise taxes to Tower Loan. Thereafter, on May 16, 1994, the chancery court entered its Final Judgement affirming the Commission's Order and awarding a judgment against Tower Loan in the amount of $47,965.23 together with interest until paid in full and taxing all costs against Tower Loan. On May 25, 1994, Tower Loan filed its Notice of Appeal to this Court.
The issues on appeal to this Court are as follows:
I. WHETHER THE TAX COMMISSION CALCULATED TOWER LOAN'S FRANCHISE TAX BASE IN ACCORDANCE WITH MISS. CODE ANN. § 27-13-11.
II. WHETHER THE TAX COMMISSION CAN IMPOSE UPON TOWER LOAN AN INTERPRETATION OF THE FRANCHISE TAX STATUTE WHICH HAS NEVER BEEN SET FORTH IN A RULE OR REGULATION PROMULGATED IN ACCORDANCE WITH THE ADMINISTRATIVE PROCEDURES ACT.

*1080 III. WHETHER THE EQUITY METHOD OF ACCOUNTING FOR INVESTMENT IN SUBSIDIARIES IS AN APPROPRIATE METHOD FOR USE IN CALCULATING A CORPORATION'S FRANCHISE TAX BASE.

IV. WHETHER THE TAX COMMISSION, HAVING PREVIOUSLY RESOLVED THE ISSUE OF THE APPROPRIATE METHOD OF ACCOUNTING FOR INVESTMENT IN SUBSIDIARIES IN FAVOR OF THE COST METHOD, IS NOW ESTOPPED FROM INSISTING THAT THE COST METHOD MAY NOT BE USED.

STATEMENT OF THE FACTS
Tower Loan is a Mississippi corporation engaged primarily in the business of making small consumer loans. During the years 1985, 1986, and 1987, Tower Loan had approximately forty branch offices throughout Mississippi and was the sole shareholder of two insurance companies, American Federated Insurance Company (AFIC) and American Federated Life Insurance Company (AFLIC). These subsidiaries were formed by Tower Loan for the purpose of writing insurance to protect Tower Loan's interest in the loans made by it. During the same time period, Tower Loan was also the sole shareholder of a third corporation, Consolidated Capital Investment Corporation (CCIC), which was engaged in the leasing business. CCIC was dissolved in 1987 by merger into Tower Loan.
In its franchise tax returns for the years 1985, 1986, and 1987, Tower Loan deducted the subsidiary insurance companies' capital of retained earnings[1] based on the cost method of accounting for its investments in the subsidiaries. Under the cost method, the value of a parent corporation's investment in a subsidiary is calculated on the basis of the parent's initial cost for the subsidiary's stock, and subsequent undistributed earnings are considered to be only the subsidiary's retained earnings and not the parent's retained earnings.
The Commission audited Tower Loan's franchise tax returns for 1985, 1986, and 1987 and assessed, after recalculating Tower Loan's capital, additional taxes in the amount of $42,628.11. This assessment was based upon financial statements and balance sheets supplied to the Commission by Tower Loan's accountant which reflected the equity method of accounting. Under the equity method of accounting, a parent corporation's investment in a subsidiary corporation is calculated on the basis of both the initial cost of the subsidiary's stock and the subsidiary's subsequent retained earnings.
After an appeal to the Board of Review of the State Tax Commission which upheld the assessment of additional franchise tax, Tower Loan appealed to the full Commission. The Commission affirmed the finding of the Board of Review and assessed Tower Loan for additional franchise taxes in the amount of $47,965.23, which included interest. Tower Loan, thereafter, timely appealed the decision of the Commission to the Chancery Court of the First Judicial District of Hinds County, Mississippi.
After having heard testimony of both fact and expert witnesses, having received documents, and having reviewed arguments and memorandum briefs of counsel, the chancery court found in its Memorandum Opinion and Order that the Commission properly assessed Tower Loan additional franchise taxes, penalties and interest for the years 1985, 1986, and 1987.

DISCUSSION OF THE LAW

I. WHETHER THE TAX COMMISSION CALCULATED TOWER LOAN'S FRANCHISE TAX BASE IN ACCORDANCE WITH MISS. CODE ANN. § 27-13-11.

Standard of Review
This Court reviews actions of the State Tax Commission under an arbitrary and capricious standard. Mississippi State *1081 Tax Com'n v. Dyer Inv. Co., Inc., 507 So.2d 1287, 1289 (Miss. 1987). Furthermore, the federal courts sitting in this state have held that "[a]n agency's interpretation of a regulation it has been authorized to promulgate is entitled to great deference and must be upheld unless it is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." Board of Trustees of State Institutions of Higher Learning v. Sullivan, 763 F. Supp. 178, 184 (S.D.Miss. 1991).

Analysis
Miss. Code Ann. § 27-13-5 imposes a franchise or excise tax upon corporations organized, created or established under the laws of this state. Tower Loan is statutorily obligated, in the absence of some exemption, to pay the franchise tax. However, the amount of that tax and the measurement thereof is at the heart of the present dispute between Tower Loan and the Commission.
Tower Loan argues that the Commission erroneously calculated the franchise tax owed by it when the Commission included the retained earnings of the subsidiaries in calculating the value of its capital. The Commission contends that Tower Loan made an unauthorized deduction on its franchise tax returns of its retained earnings for that portion of its retained earnings attributable to its interest in its subsidiaries.
To determine if Tower Loan owes the additional franchise tax, it is necessary to interpret two franchise tax statutes and determine the legislative intent expressed in those statutes. During the period of the assessment in question, the first of these statutes, § 27-13-9 read as follows:
The tax imposed, levied and assessed, under the provisions of this chapter, shall be calculated on the basis of the value of the capital employed in this state for the year preceding the date of filing the return, whether a calendar year, or fiscal year, except where otherwise provided in this chapter, measured by the combined issued and outstanding capital stock, paid-in capital, surplus and retained earnings; provided, that in computing capital, paid-in capital, surplus and retained earnings, there shall be included deferred taxes, deferred gains, deferred income, contingent liabilities and all true reserves, including all reserves other than for definite known fixed liabilities which do not enhance the value of the assets; and amounts designated for the payment of dividends shall not be excluded from such calculations until such amounts are definitely and irrevocably placed to the credit of stockholders, subject to withdrawal on demand; provided, however, there shall not be included in the value of the capital stock any sums representing debts, notes, bonds and mortgages due and payable; nor depreciation reserves, bad debt reserves, nor reserves representing valuation accounts, nor redeemable preference shares issued by a railroad pursuant to Section 506 of the Railroad Revitalization and Regulatory Reform Act of 1976. But in no case shall the franchise tax so computed be less than Twenty-five Dollars ($25.00) for the period covering which the return is filed. In no case shall the determined capital in Mississippi be less than the assessed value of the real estate and tangible personal property in Mississippi for the year preceding the year in which the return is due.
1985 Miss. Laws 521, § 4 (emphasis added). In determining the amount of capital as defined in § 27-13-9, Miss. Code Ann. § 27-13-11 must be read in conjunction therewith. During the period of assessment in question, § 27-13-11 read as follows:
For the purpose of determining the amount of capital, as defined in Section 27-13-9, Mississippi Code of 1972, as amended, the book value of accounts as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct, except where the commissioner determines that the book value does not properly reflect capital employed in this state and in that situation the commissioner's determination of capital shall be prima facie correct.
If any organization has cause to believe that the calculations required on the return *1082 prescribed are not sufficiently informative or do not properly reveal the true franchise or excise tax to be due as measured by the value of the capital of the organization, or shall feel aggrieved at the requirements upon it for information or tax, then such organization shall have the right to file with the commissioner a petition and affidavit signed as returns are by this chapter required to be signed, setting forth the facts showing the true value of its capital.
1985 Miss. Laws 521, § 5 (emphasis added).
By reference to the statutory provisions quoted above, this Court must determine whether the retained earnings of the subsidiary insurance companies must be included in Tower Loan's tax base for franchise tax purposes. Section 27-13-9 provides that the tax base shall be "the value of the capital employed in this state" and that such capital is "measured by the combined issued and outstanding capital stock, paid-in capital, surplus and retained earnings." 1985 Miss. Laws 521, § 4. Importantly, this statute must be read in light of § 27-13-11 which requires the amount of the capital to be determined by "the book value of accounts as regularly employed in conducting the affairs of the corporation." 1985 Miss. Laws 521, § 5.
Tower Loan argues that its regularly employed books of account valued Tower Loan's investments in the subsidiaries based on the cost method of accounting. Under the cost method of accounting, the retained earnings of a subsidiary corporation do not appear on the parent corporation's books and are considered to be only the subsidiary's retained earnings. Tower Loan predicated its deductions of the subsidiaries' retained earnings from Tower Loan's 1985, 1986, and 1987 franchise tax returns based on the view that its books were kept on the cost method of accounting. Therefore, Tower Loan contends that its exclusion of the retained earnings of the subsidiaries in calculating the value of its capital was consistent with the provisions of Miss. Code Ann. § 27-13-11.
The Commission argues that the financial statements and balance sheets submitted for audit purposes to the Commission by Tower Loan reflected the equity method of accounting under which all of the value associated with the ownership of a subsidiary's stock, including the subsidiary's retained earnings, is recognized in the parent corporation's franchise tax base. Therefore, based on evidence which indicated that Tower Loan used the equity method of accounting, the Commission believes that its inclusion of the retained earnings of the subsidiaries in calculating the value of Tower Loan's capital was consistent with the provisions of Miss. Code Ann. § 27-13-11.
At trial, testimony concerning the meaning of "book value of accounts as regularly employed in conducting the affairs of the corporation" was given. Hugh Parker, testifying on behalf of Tower Loan as an expert in the field of accounting, stated that the day-to-day operations of Tower Loan were kept on the cost basis of accounting based on computer print-outs that "are Tower's books and accounts" given to Parker to use to prepare his testimony and Tower Loan's returns. Parker further testified that financial statements are not books of the company under financial accounting and that a balance sheet is not considered the books of a corporation, but is a summary for use by investors and creditors. In addition, Parker testified that the retained earnings of the subsidiaries is an account, but not when found on a financial statement. Interestingly, Parker believed that the retained earnings of Tower Loan's subsidiaries was not capital employed by Tower Loan, yet Tower Loan was employing the capital reflected on the financial statements when it borrowed money from the bank. Cecil Brown, testifying on behalf of Tower Loan as an expert in the field of accounting and taxation, reiterated Parker's belief that financial statements are not the books of the corporation. He also testified that books of the corporation for financial accounting purposes are the book of original entry and book of final entry, and for tax accounting purposes, adjusting journal entries and work papers are considered books of the corporation. Tower Loan's accountant, Jimmy Childres, testified that his accounting firm used the cost method to calculate Tower Loan's franchise tax, but he provided balance sheets based on the equity method to the Commission's auditor. Childres also admitted that the figures reflected on the balance sheets accurately reflected the book value of each of the accounts.
*1083 Testifying for the Commission, Mike Parks, employed by the Commission as an auditor, said that the audited financial statements reflecting the equity method of accounting and provided by Tower Loan's accountant constituted the books of the corporation. Further, Parks testified that he did not look at the ledgers and journals of Tower Loan because it was normal operating procedure for him to rely on federal income tax returns and the audited financial statements of a corporation. Also testifying for the Commission, Eddie Beck, administrative assistant to the chairman of the Mississippi State Tax Commission, stated that the Commission based its opinion that Tower Loan used the equity method of accounting on financial reports which summarized the corporation's books. The Commission's auditors rely primarily on audited financial statements of the corporation to determine franchise tax, because such statements present fairly the financial position of the corporation. It was Beck's position that when a corporation, to obtain a loan from a bank, uses a financial statement to reflect its operations, its net worth, and its function, the capital has been employed.
To determine the amount of capital that is included in Tower Loan's franchise tax base, § 27-13-11, supra, states that "the book value of accounts as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct." 1985 Miss. Laws 521, § 5. In the absence of a statutory definition of this phrase, it must be given its common and ordinary meaning. Miss. Code Ann. § 1-3-65 (1972); Richardson v. Canton Farm Equipment, Inc., 608 So.2d 1240, 1250 (Miss. 1992); Board of Trustees of State Institutions of Higher Learning v. Mississippi Publishers Corp., 478 So.2d 269, 280 (Miss. 1985). Tower Loan, in interpreting the statute, selects certain words from the statute and stresses that its books include ledgers, work papers, and journals and do not include its financial statements. However, the statute refers not to the value of capital listed on the books, but to the book value of accounts. Given its most common and ordinary meaning, "book value" is the value at which an asset is carried on the balance sheet. Black's Law Dictionary 126 (Abr. 6th ed. 1991); See Dyer, 507 So.2d at 1292 (`book value as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct' means that the book value of an account on a corporation's balance sheet shall be accepted as prima facie correct). The balance sheets and financial statements provided by Tower Loan to the Commission for franchise tax audit purposes reflected the equity method of accounting. In fact, no documentation showing the cost method of accounting was provided to the Commission. Therefore, the Commission correctly calculated Tower Loan's franchise tax base when it included the retained earnings of the subsidiaries with the capital of Tower Loan in light of the fact that the financial statements and balance sheets reflected the equity method of accounting.
This Court in Scott Bldg. Supply Corp. v. Mississippi State Tax Com'n, 235 Miss. 22, 108 So.2d 557 (1959), held that the capital employed by a taxpayer is the basis upon which the tax is to be calculated. In Scott the State Tax Commission audited Scott Building Supply Corporation's ("Scott") franchise tax returns covering a certain period of years and discovered that Scott failed to include the tax due based on the value of the revaluation surplus shown on Scott's balance sheets and its books of account. Scott, 108 So.2d at 559. Thereafter, the Commission assessed additional franchise tax based upon information obtained from Scott's balance sheets and other records. Id. In upholding the Commission's assessment of additional franchise taxes, this Court said that "[i]t is the value of the capital employed in this state which is protected by the government and the laws of this state, that is to be used as the basis upon which the tax is to be calculated." Id. at 562.
Tower Loan asserts that the financial statements cannot be used to determine its franchise tax base because of the possibility that different financial statements for a particular company could reflect different accounting methods. However, § 27-13-11 addresses this situation by requiring that book value of the accounts be that "regularly employed in conducting the affairs of the corporation." 1985 Miss. Laws 521, § 5. Testimony given at trial indicates that Tower Loan employed in the ordinary course of its business *1084 the book value of the retained earnings account as reflected on the balance sheets submitted to the Commission by Tower Loan's accountant. The balance sheets of Tower Loan, which were calculated using the equity method of accounting, were used for preparing its federal income taxes, in financial statements and for bank purposes. Tower Loan utilized on a month-to-month basis its financial statements based on the equity method to secure a line of credit with Deposit Guaranty National Bank (DGNB). As further evidence that Tower Loan was employing the capital of its two subsidiary insurance companies, Tower Loan assigned all of the stock of the subsidiaries to DGNB as security for the loan. Tower Loan used its financial statements to prepare financial reports for shareholders. And Tower Loan employed its financial statements based on the equity method of accounting to calculate federal and state income taxes.
The express language of the franchise tax statutes provides no exemptions for the retained earnings of a subsidiary. The intent of the legislature to include the assets of a subsidiary corporation in the parent corporation's franchise tax base was made clear by the amendment in 1988 of Miss. Code Ann. § 27-13-9. To that statute was added the statement that "[t]here shall not be any exclusion of capital by a corporation relating to the stock of another corporation." Miss. Code Ann. § 27-13-9 (1994 Supp.).
From the evidence and testimony presented at trial, it is apparent that the chancellor correctly interpreted Miss. Code Ann. § 27-13-11. Her determination that the book value of accounts as employed by Tower Loan in conducting its normal business was based upon the equity method of accounting is not arbitrary and capricious.

II. WHETHER THE TAX COMMISSION CAN IMPOSE UPON TOWER LOAN AN INTERPRETATION OF THE FRANCHISE TAX STATUTE WHICH HAS NEVER BEEN SET FORTH IN A RULE OR REGULATION PROMULGATED IN ACCORDANCE WITH THE ADMINISTRATIVE PROCEDURES ACT.
Next, Tower Loan argues that the Commission requires that a taxpayer's capital for franchise tax purposes be determined using the equity method of accounting. Tower Loan bases this assertion on statements made by Beck indicating that the Commission in the 1970's ruled that the equity method was appropriate for franchise tax purposes. Beck could not remember if this ruling was ever published, but he did remember that the ruling was made prior to the enactment of the Administrative Procedures Act (hereinafter, "APA") on January 1, 1977. However, Tower Loan erroneously asserts that the Commission assessed Tower Loan additional franchise taxes based on this ruling.
From testimony given at trial, it is clear that the Commission based its opinion that Tower Loan used the equity method of accounting on financial reports which summarized Tower Loan's books. Beck testified that if a taxpayer maintained its books on the cost basis of accounting, then the Commission would go by that for franchise tax purposes. In fact, the Commission does not require a parent corporation using solely the cost method of accounting to recognize the retained earnings of its subsidiaries in the parent's franchise tax base; however, if the parent corporation chooses to use the equity method of accounting, the Commission requires the parent corporation in its franchise tax base to recognize all of the value associated with the ownership of the subsidiaries' stock.
For the purposes of this argument, it matters not whether the Commission followed the procedure mandated by the APA for establishing a rule, because the Commission did not assess the franchise taxes on the basis of any rule requiring that a certain accounting method be used. Accordingly, nowhere in her opinion did the chancellor base her decision to uphold the Commission's assessment on any sort of rule which required that a certain accounting method be used. Rather, the chancellor affirmed the order of the Commission based upon Tower Loan's book value of accounts as regularly employed in conducting the affairs of the corporation, and such accounts were calculated *1085 according to the equity method of accounting. Therefore, Tower Loan erroneously argues that the Commission imposed upon Tower Loan the requirement that the equity method of accounting be employed to determine its franchise tax base. This argument is without merit.

III. WHETHER THE EQUITY METHOD OF ACCOUNTING FOR INVESTMENT IN SUBSIDIARIES IS AN APPROPRIATE METHOD FOR USE IN CALCULATING A CORPORATION'S FRANCHISE TAX BASE.
Tower Loan argues that the cost method of accounting is most consistent with the statutory structure for franchise tax calculation. It bases this argument on the fact that the Commission does not allow the filing of consolidated returns by a parent corporation and its subsidiary for franchise tax purposes. See Mississippi Combination Return: Corporation Franchise Tax, Corporation Income Tax, Small Business Corporation Income Tax, p. 2 (Ex. 9). Thus, in the absence of an exemption, a parent corporation and its subsidiary must each file a franchise tax return and must each pay franchise tax on its capital. The equity method of accounting, Tower Loan argues, is inappropriate under Mississippi's franchise tax scheme, because that method gives the same effect on a parent corporation's books (the inclusion of the retained earnings of a subsidiary as part of the capital of the parent) as does consolidation. Tower Loan contends that, when the equity method is used, the same capital is counted twice. That is, when both the parent and subsidiary pay franchise tax, both entities will pay franchise tax based upon the retained earnings of the subsidiary if the equity method is used. Moreover, the appellant submits that this "double-counting" results in illegal and unconstitutional double taxation.
The beginning point in analyzing this issue is with the language found in the franchise tax statutes at the time of the years assessed in this case. Franchise tax is imposed, in the absence of an exemption, upon every Mississippi corporation and is measured based on "the value of the capital used, invested or employed in the exercise of any power, privilege or right enjoyed by such organization within this state." Miss. Code Ann. § 27-13-5; 1982 Miss. Laws 489, § 8. The tax imposed is calculated based on the "value of the capital employed in this state" measured by "the combined issued and outstanding capital stock, paid-in capital, surplus and retained earnings."[2] The amount of the capital is determined by "the book value of accounts as regularly employed in conducting the affairs of the corporation." Miss. Code Ann. § 27-13-11; 1985 Miss. Laws 521, § 5. Nowhere in these statutes is the equity method of accounting prohibited. Likewise, nowhere in these statutes is the cost method of accounting required. Rather, the book value of accounts as regularly employed by the corporation is used to determine the taxable capital of a corporation for franchise tax purposes.
In determining its taxable capital, Tower Loan cites and misconstrues Miss. State Tax Com'n v. Dyer Inv. Co. Inc., 507 So.2d 1287 (Miss. 1987), to define the taxable capital of a corporation as excluding the undistributed earnings of a subsidiary. In Dyer, the issue was when not-yet-due payments originating from an installment sale of assets and labeled "deferred gain" are recognized as profits when employing the installment method of accounting. Id. at 1287. The Dyer Court held that the term profits connoted income and that, pursuant to the installment method of accounting, funds derived from an installment sale were not income until the tax year in which the funds were actually received. Id. at 1291. The court in that case minimized the importance of an account label, and it "consider[ed] that which underlies the label `undivided profits' to be limited to sums which have come into the possession and control of the taxpayer and which are presently *1086 available for division and distribution among the shareholders." Id. The court further held that their focus was on the nature of the account and the rights that a taxpayer has in the equity the account represents. Id.
In the present case, Tower Loan has all the rights in the equity of its subsidiaries since it is the sole shareholder. See, e.g., Southern Package Corporation v. State Tax Commission, 195 Miss. 864, 15 So.2d 436, 437 (1944), suggestion of error overruled by 195 Miss. 864, 16 So.2d 856 (1944) (capital stock, for franchise tax purposes, represents or evidences capital used, invested or employed within this state). Thus, Tower Loan must recognize its equity in its subsidiaries in each taxable year. The funds represented by the subsidiaries' retained earnings accounts were available for use by Tower Loan in the years in which the franchise tax was assessed. Because Tower Loan's book value of accounts as employed in the ordinary course of business reflected the equity method of accounting, that method was appropriate for use in calculating Tower Loan's tax base.
Tower Loan's argument that the equity method of accounting results in illegal double taxation focuses on the source of the capital of the corporations. However, franchise tax is not a tax on the capital of a corporate entity; it is a tax on a corporate entity "for the right granted by the laws of this state to exist as such organization, and to enjoy, under the protection of the laws of this state, the powers, rights, privileges and immunities derived from the state by the form of such existence." Miss. Code Ann. § 27-13-5; 1982 Miss. Laws 489, § 8. The tax, while not on the capital itself, is measured by the value of the capital employed in this state. Scott, 108 So.2d at 562. The determination of amount and measurement of the franchise tax rests solely in the discretion of the state. In the franchise tax case of Southern Package, this Court in its opinion stated:
Corporations enjoy privileges and immunities not possessed by natural persons, and for the security and protection, by its laws and authority, of such privileges and immunities, the state, for revenue and as a quid pro quo, may levy upon corporations which carry on any substantial part of their business activities in the state, an exaction called a franchise tax. The amount of the franchise tax and the mode of the measurement thereof are matters which rest within legislative discretion, when not burdensome or oppressive and when solely for revenue. The usual mode of measurement is to look to the amount of the capital of the corporation employed or so situated as to be privileged to be employed in the state, and in determining the amount of capital, the total of the capital stock, stated surplus, and undivided profits of a corporation is used prima facie as a determinative factor. Such, as to the features mentioned, is our Franchise Tax Law, Chapter 121, Laws 1934.
Southern Package, 15 So.2d at 437 (emphasis added).
Tower Loan cites Guess v. Riverside Farms, Inc., where this Court stated that "[i]llegal double taxation consists of taxing the same property twice, for the same purpose, by the same taxing authority, during identical taxing periods." Guess v. Riverside Farms, Inc., 340 So.2d 6, 9 (Miss. 1976). However, the franchise tax under the laws of this state does not constitute a tax on the same property, for the same purpose. Tower Loan enjoys a separate corporate existence from both of its subsidiaries. While some of the capital upon which the tax is based may be the same for Tower Loan and its subsidiaries, the taxable incident underlying the tax, separate corporate existence, is different. It is the privilege of corporate existence which is the proper object of taxation in the present case. Furthermore, Mississippi franchise tax statutes are nondiscriminatory because Tower Loan is required by statute to pay franchise tax as would any other operating corporation which employed the equity method of accounting. Thus, application of the equity method of accounting in determining the amount of franchise tax owed by a corporation under Mississippi law does not result in prohibited double taxation.
The intent of the Mississippi legislature to include the assets of a subsidiary corporation *1087 in the parent corporation's franchise tax base was made clear by amendment in 1988. 1988 Miss. Laws 391. Moreover, the book value of accounts as regularly employed by Tower Loan in conducting its business affairs reflects the equity method of accounting which requires the inclusion of the retained earnings of the subsidiaries in the determination of the parent's capital for franchise tax purposes.
Tower Loan admits, as it must, that there is no literal double taxation in the case at bar, because its subsidiary insurance companies are statutorily exempt from franchise tax pursuant to Miss. Code Ann. § 27-13-63. However, Tower Loan argues that assessment of franchise taxes based on the equity method includes the capital of these exempt subsidiary insurance companies in the parent corporation's tax base. Thus, the appellant contends that the Commission is attempting to evade § 27-13-63 by basing its taxation of Tower Loan upon the value of capital which belongs to exempt corporations. Once again, however, the appellant misconstrues the franchise tax statutes and legislative intent thereof.
The counter-argument found in the Commission's brief soundly thwarts the advancement of this proposition and the following analysis is taken from its brief. Mississippi Code Ann. § 27-13-63 (1972) exempts certain organizations from franchise tax. Each exemption in the statute applies to organizations or entities, not to the income or retained earnings of the entity. Miss. Code Ann. § 27-13-63 (1972). The entities exempted from franchise tax by subsection (i) are: "Insurance Companies which are qualified with and regulated by the Commissioner of Insurance." Miss. Code Ann. § 27-13-63(i) (1972). Tower Loan's subsidiaries are insurance companies and, as such, fall within this exemption, while Tower Loan does not come within any franchise tax exemption. Obviously, the retained earnings of the subsidiary insurance companies recognized by Tower Loan in its accounts are not exempt entities.
In 1936, the Tennessee Supreme Court addressed the constitutionality of including property exempt from ad valorem tax in the measurement of capital for purposes of a privilege tax. Corn v. Fort, 170 Tenn. (Beeler) 377, 95 S.W.2d 620, 625 (1936). The court in that case held:
The fact that the tax imposed on a corporation for the privilege of doing intrastate business in this state is measured by the capital invested, thereby including capital invested in property exempt from ad valorem tax, does not render the tax invalid. [citations omitted] The reason for the rule is that such tax is not a tax upon the exempt property, but is a privilege tax in the measure of which tax exempt property can be included.
Id.
Using the same reasoning, the United States Supreme Court has held that franchise tax could be levied upon a corporation inclusive of the value of that corporation's capital reflecting the corporation's stock that the corporation had invested in United States bonds which, on their own, cannot be the subject of taxation by a state. Home Ins. Co. of New York v. State of New York, 134 U.S. 594, 606, 10 S.Ct. 593, 597, 33 L.Ed. 1025 (1890). In Home Insurance, the Court reasoned:
The right or privilege to be a corporation, or to do business as such body, is one generally deemed of value to the corporators, or it would not be sought in such numbers as at present. It is a right or privilege by which several individuals may unite themselves under a common name, and act as a single person, with a succession of members, without dissolution or suspension of business, and with a limited individual liability. The granting of such right or privilege rests entirely in the discretion of the State, and, of course, when granted, may be accompanied with such conditions as its legislature may judge most befitting to its interests and policy. It may require, as a condition of the grant of the franchise, and also of its continued exercise, that the corporation pay a specific sum to the State each year, or month, or a specific portion of its gross receipts, or of the profits of its business, or a sum to be ascertained in any convenient mode which it may prescribe.
*1088 Home Insurance, 134 U.S. at 599-600, 10 S.Ct. at 595. The Court further concluded that "the tax for which the suit is brought is not a tax on the capital stock or property of the company, but upon its corporate franchise, and is not, therefore subject to the objection stated by counsel, because a portion of its capital stock is invested in securities of the United States." Id. at 606, 10 S.Ct. at 597.
The United States Supreme Court reiterated this position in Educational Films Corp. v. Ward, wherein it reaffirmed the decision in Home Insurance, supra, that "a non-discriminatory tax upon corporate franchises is valid, notwithstanding the inclusion of tax exempt property or income in the measure of it." Educational Films Corp. v. Ward, 282 U.S. 379, 392, 51 S.Ct. 170, 173, 75 L.Ed. 400 (1931).
Following the precedent of Home Insurance Co., and Educational Films Corp., the trial court correctly determined that Tower Loan's franchise tax base, as reflected in its book value of accounts, included the ownership interest of its subsidiaries without regard for the tax status of the subsidiaries.

IV. WHETHER THE TAX COMMISSION, HAVING PREVIOUSLY RESOLVED THE ISSUE OF THE APPROPRIATE METHOD OF ACCOUNTING FOR INVESTMENT IN SUBSIDIARIES IN FAVOR OF THE COST METHOD, IS NOW ESTOPPED FROM INSISTING THAT THE COST METHOD MAY NOT BE USED.
Tower Loan argues that the Commission was estopped from calculating Tower Loan's franchise tax base using the equity method of accounting for investments, because of the Commission's position that bank holding companies could calculate their franchise tax base by the cost method. The Commission argues that the trial court was correct in finding that Tower Loan was not similarly situated to bank holding companies.
At trial, Buelow testified that, as chairman of the Mississippi State Tax Commission and Commissioner of Revenue, he signed a memorandum in 1992 that was an agreement between the Commission and the banking industry concerning the application of franchise tax to bank holding companies. The memorandum was issued to clarify the Commission's position on the matter so that it would remain consistent with the position that the Commission took in a 1968 letter that it had sent to a bank stating that the cost method of accounting was appropriate for bank holding companies. Apparently, the current Commission was unaware of the prior Commission's position in 1968 until the bank holding companies produced the 1968 correspondence outlining the past Commission's view that franchise tax on holding companies should be based on the cost method. Testimony at trial indicated that the Commission issued the memorandum in 1992 because of its belief that it was bound by the prior Commission's position. See Mississippi State Tax Com'n v. Trailways Lines, Inc., 567 So.2d 228, 233 (Miss. 1990) (Commission was estopped from assessing and collecting additional gross receipts tax from a corporation when that corporation had relied upon an earlier ruling given by the Commission to an identically situated corporation.)
The Mississippi legislature subsequently addressed the holding company issue when it promulgated statutory amendments mandating that the franchise tax basis of a "holding corporation" be determined utilizing a cost basis formula as set forth in Miss. Code Ann. § 27-13-9(2) which reads as follows:
(2) In the case of a holding corporation, the value of the capital used, invested or employed in this state shall exclude that portion of the book value of the holding corporation's investment in stock or securities of its subsidiary corporation determined under the following formula: (a) The ratio between (i) the holding corporation's investment in stock or securities of its subsidiary corporation, computed using the cost method of accounting pursuant to regulations promulgated by the commissioner, and (ii) the holding corporation's total assets shall be computed; (b) such ratio then shall be applied to the total capital stock, surplus, undivided profits and true reserves of the holding corporation *1089 in order to arrive at the amount of the exclusion.
1993 Miss. Laws 350, § 2 (emphasis added). Apparently, the legislature determined that holding corporations were not similarly situated as regular operating corporations. Concurrently, the legislature promulgated precise definitions for the terms "holding corporation" and "subsidiary corporation" in Miss. Code Ann. § 27-13-1 as follows:
(i) "Holding corporation" means a corporation, association or joint stock company: (i) owning capital stock of one or more other corporations, associations or joint stock companies, which stock ownership represents at least eighty percent (80%) of the value and at least eighty percent (80%) of the combined voting power of all classes of issued and outstanding capital stock of such other corporation, association or joint stock company; except that for purposes of this definition the term "stock" does not include nonvoting stock which is limited and preferred as to dividends; and (ii) deriving at least ninety-five percent (95%) of its gross receipts from dividends, interest, royalties, rents, services provided to members of an affiliated group (as defined in Section 27-7-37(2)(d)) to the extent of the cost of providing such services, and from such additional sources as the commissioner may specify by regulation.
.....
(j) "Subsidiary corporation" means a corporation, association or joint stock company of which at least eighty percent (80%) of the value and at least eighty percent (80%) of the combined voting power of all classes of its issued and outstanding capital stock is owned by a holding corporation, except that for purposes of this definition the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.
Miss Code Ann. § 27-13-1(i), (j) (1994 Supp.); 1993 Miss. Laws 350, § 1.
Tower Loan does not fit within the framework of a holding company as set forth in the statutory definition in that Tower Loan does not derive at least 95% of its gross receipts from dividends, interest, royalties, rent or services provided to members of an affiliate group. Tower Loan is not similarly situated as a holding company, because it is an operating company which actively employs its capital whereas a holding company does not.
In Home Insurance, the United States Supreme Court held that a New York franchise tax law which subjected all corporations of the same type and under the same conditions to the same tax is not discriminatory. 134 U.S. at 606-607, 10 S.Ct. at 597-98. Tower Loan, under Mississippi law, was assessed franchise taxes like any other operating corporation in Mississippi. It is of no consequence to Tower Loan that the Mississippi legislature chose to differentiate between the franchise taxes paid by holding corporations as opposed to operating corporations. Because the granting of the privilege to be a corporation and to do business as such rests entirely in the discretion of the state, the state is entirely justified in imposing such conditions on that privilege as it deems necessary as long as such conditions are not imposed in a discriminatory manner. Home Insurance, 134 U.S. at 600, 607, 10 S.Ct. at 595, 597-98. Furthermore, if the Mississippi legislature had intended to mandate that every corporation was to use the cost method of accounting for investments in subsidiaries, then the legislature simply could have substituted "any corporation" for the words "holding corporation" in Miss. Code Ann. § 27-13-9(2). Therefore, for the foregoing reasons, this Court finds that the chancellor's decision that the Commission's position requiring the cost method of accounting for investment in subsidiaries of holding corporations is not binding on the Commission's treatment of operating corporations is not arbitrary and capricious.

CONCLUSION
The chancellor, in upholding the Commission's position, correctly interpreted Miss. Code Ann. § 27-13-11, and her determination that the book value of accounts as employed by Tower Loan in conducting its normal business was based upon the equity method of accounting is not arbitrary and capricious. The retained earnings of the subsidiary insurance companies were properly *1090 included by the Commission in Tower Loan's franchise tax base.
The Commission did not assess Tower Loan's franchise taxes on the basis of any rule requiring that a certain accounting method be used. Rather, the Commission based its opinion that Tower Loan used the equity method of accounting on financial reports which summarized Tower Loan's books. Accordingly, the chancellor affirmed the order of the Commission based upon Tower Loan's book value of accounts as regularly employed in conducting the affairs of the corporation, and such accounts were calculated according to the equity method of accounting.
The application of the equity method of accounting in determining the amount of franchise tax owed by a corporation under Mississippi law does not result in prohibited double taxation. While some of the capital upon which the tax is based may be the same for Tower Loan and its subsidiaries, the taxable incident underlying the tax, separate corporate existence, is different. It is the privilege of corporate existence which is the proper object of taxation in the present case. Furthermore, while insurance companies are exempt from paying franchise tax, the retained earnings of the subsidiary insurance companies recognized by Tower Loan in its accounts are not exempt entities.
Finally, the Commission's position that holding companies should calculate their franchise tax base using the cost method of accounting for investments in subsidiaries does not require that the Commission treat other corporations accordingly. Tower Loan is not similarly situated as a holding company, because it is an operating company which actively employs its capital whereas a holding company does not. Because the granting of the privilege to be a corporation and to do business as such rests entirely in the discretion of the state, the state is entirely justified in imposing such conditions on that privilege as it deems necessary as long as such conditions are not imposed in a discriminatory manner. The Mississippi franchise tax statutes are not discriminatory because Tower Loan is required by statute to pay franchise tax as would any other operating corporation which employed the equity method of accounting. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., not participating.
NOTES
[1] Retained earnings, also known as earned capital or surplus, is the amount of net income that has been earned by a corporation since its inception but has not been paid out to the shareholders in the form of dividends.
[2] In 1988, § 27-13-9 was amended to provide that "[t]here shall not be any exclusion of capital by a corporation relating to the stock of another corporation." 1988 Miss. Laws 391, § 4. While this amendment was enacted after the years assessed in this case, the intent of the legislature to include the assets of a subsidiary corporation in the parent corporation's franchise tax base was made clear by this amendment.